[Pace v. Louisville & Nashville Railroad Company.]

# Pace *v*. Louisville & Nashville Railroad Company.

## *Personal Injury Action by Employe.*

(Decided Feb. 26, 1910. 52 South. 52.)

1. *Pleading; Pleas; Statement.*—A plea should contain a succinct statement of the facts relied on in bar of the action.

2. *Same; Conclusions.*—An averment of negligence, whether stated as a cause of action or as a defense need not be as specific as the proof essential to sustain it, and when from the facts as they are and as they must be alleged, different minds might draw different conclusions, it is the office of the pleader and his duty to draw the conclusion necessary to the maintenance of his action or defense.

2. *Master and Servant; Injury to Servant; Pleas.*—Where the action was for injury to a servant caused by the defective condition of a lubricator on the locomotive which he was employed to run, pleas averring that after discovering the defect, the servant negligently failed to shut off the steam, were not insufficient because not charging in so many words, that a reasonable time elapsed after the discovery by the servant of the defect within which to turn off the steam, since such was necessarily included in the language used.

4. *Same; Evidence.*—Where the action was for injury to a servant on account of a defect in the lubricator on the engine which he was engaged to run and the defenses were contributory negligence in failing to shut off the steam, and to use certain auxiliaries after he discovered the defective condition of the lubricator, which if properly used would have prevented the injury, and the question in issue was whether the auxiliaries were defective or whether any other fact stood in the way of the use of them by plaintiff under the circumstances, it was competent for plaintiff to testify as to the condition of the auxiliaries.

5. *Same; Incompetent Felow Servant; Evidence.*—Where a servant injured by defect in the lubricator of an engine had pointed out to the master's superintendent the defects when entering the employment, which defect the superintendent had ordered another servant to repair, the fact that a single accident had happened from the defects would not show that the master had been negligent from the beginning in employing the other servant, or in failing to acquire knowledge of his incompetency during the employment, and before the accident.

6. *Same; Evidence.*—Where a witness testified that he did not know the servant who had made the repairs on the lubricator, it was not admissible for him to state, as showing such servant's incompetency, that previous to the injury, witness had been employed by the master in the place where repairs were made, and that the men employed there were not competent machinists.

[Pace v. Louisville & Nashville Railroad Company.]

7. *Same.*—Where it appeared beyond controversy that a certain servant had repaired the lubricator which caused the injury, it was irrelevant as to whether or not another employe was an incompetent mechanic.

8. *Appeal and Error; Harmless Error; Evidence.*—A question calling for a conclusion as to whether or not the auxiliaries could have been used in the lubricator, was not prejudicial where the witness both on the direct and cross examination had distinctly testified that he had tried to use the auxiliaries but had found them out of order, so that they would not work and he could not work them.

9. *Same.*—Although a question called for an opinion in respect to a matter which the jury understood as well as the witness, no matter how expert, the answer of the witness that he did not know, rendered the question harmless.

10. *Same; Cure of Erroneous Rulings by Instructions.*—Erroneous rulings as to the admissibility of evidence is not cured by the giving of written charges covering same.

11. *Evidence; Hearsay.*—Where a witness testified to having heard the injured employe, when preparing to go out, on a trip, ask the master's superintendent in charge of preparing engine, if the work on the lubricator had been done and that if it had not he would not go out on the engine, the witness was properly permitted to testify that after the injured employe had left the room in which the conversation occurred, he heard the superintendent ask the foreman if such work had been done, and the foreman replied that it had, but that the lubricator was broken, but might make the trip; such evidence is admissible, not for the purpose of showing that the lubricator was in defective condition, but that the superintendent had notice of the defect.

12. *Same; Documentary Evidence; Memory as to Facts Recorded.*—Where a witness, an engineer who had taken out the engine with the alleged defective lubricator on the day before the plaintiff was injured, had testified of his own knowledge and recollection, and without the aid of refreshment, that at the time he made the report on his return from the trip the water valve on the lubricator was not leaking, the memorandum consisting of the report merely showing in a negative way that the lubricator or its water valve was in good condition at the time, was improperly admitted in evidence, the condition of the lubricator or water valve being the only item of proper inquiry.

13. *Same; Res Inter Alios Acta.*—Ordinarily it is not competent to show compensation for an injury where it comes from a collateral source wholly independent of the defendant, as illustrating either the circumstances of the accident, or for abatement of compensation, such compensation being as to the defendant res inter alios acta with which the defendant has no concern; and in an action by the servant for an alleged injury to his eye caused by a defective lubricator on the engine, it was not admissible to show that plaintiff had been paid $4,500.00 by a benefit association for the loss of his eye, in order to show interest, especially where plaintiff had no longer a questioned or litigated interest in the insurance money.

[Pace v. Louisville & Nashville Railroad Company.]

14. *Witnesses; Impeachment.*—Where the conductor on the train which plaintiff was pulling testified that he was on the engine at the time and place when and where plaintiff located the accident resulting in his injury and saw no occurrence of the kind described it was competent to ask such conductor whether he violated a rule of his employe when he rode upon the engine, for the purpose of discrediting his statement, although plaintiff could not argue the probative force of the matter sought in the question.

15. *Charge of the Court; Misleading Instruction; Duty to Request Explanatory Charge.*—Where a charge given is abstractly correct, if the adversary party conceives that it may be misleading in its tendencies, it becomes his duty to ask for an explanatory charge.

APPEAL from Anniston City Court.

Heard before Hon. THOMAS W. COLEMAN, JR.

Action by George Pace against the Louisville & Nashville Railroad Company for personal injuries while an employe. Judgment for defendant and plaintiff appeals. Reversed and remanded.

TATE & WALKER, for appellant. The court erred in overruling demurrer to pleas 2, 3, and 4.—*Osborn v. Ala. S. & W. Co.,* 135 Ala. 571, and authorities there cited; *T. C. I. & R. R. Co. v. Burgess,* 47 South. 1029; *Woodward I. Co. v. Curl,* 44 South. 969. The 4th count of the complaint was sufficient.—*Eureka Co. v. Bass,* 81 Ala. 204 and cases cited; *Seaboard Mfg. Co. v. Woodson,* 91 Ala. 148, and cases cited. Under the authority of these cases, the conversation between the superintendent and the foreman as to the condition of the lubricator was competent. McDowell was the alter ego or vice principal.—*M. & M. R. R. Co. v. Sowell,* 67 Ala. 192. So if McDowell had knowledge of the facts that he was negligent in allowing Pace to go out on that engine. Allowing Buck Pace to read his report was hearsay and inadmissible. The fact that Pace had been paid a sum of money by an insurance company for the loss of his eye was inadmissible.2 Lebatt, sec. 826; Dresser, sec. 132; Sutherlan on Damages, sec. 158; 25 L. R. A. 161; 31 L. R. A. 604; 52 Am. Rep. 683; 52 Am. St.

[Pace v. Louisville & Nashville Railroad Company.]

Rep. 465. Counsel discuss the other exceptions and objections to evidence and the written charges given and refused, but without further citation of authority.

KNOX, ACKER, DIXON & BLACKMON, for appellee. The pleas in this case to which demurrers were overruled were not analogous to the pleas condemned in the cases relied on by appellant, but were good and not subject to the demurrers interposed. A court will not be put in error for refusing to allow a witness to answer a question which he has repeatedly answered.—*C. of. Ga. Ry. v. Sims*, 50 South. 50. The court will not be put in error for overruling a merely general objection.—*L. & N. v. Banks*, 132 Ala. 471. It was not competent to prove that Fisher was inexperienced by proving merely that the lubricator was broken.—*Conrad v. Gray*, 109 Ala. 130. A contemporaneous memorandum made by a witness and sworn to by him, is admissible in evidence.— *Foster v. Smith*, 104 Ala. 248. None of the objections to the admission of the evidence as to the payment by the insurance company were good in law, and having made the specific objection none others will be considered.—*Gaston v. Weir*, 84 Ala. 193. Besides the court specifically directed in written charges that the jury should not consider this in determining plaintiff's right to recover the amount to be recovered.—*Stevenson v. Whatley*, 50 South. 41; *Foxworth v. Brown*, 120 Ala. 59. It was competent to show that the witness Reeves had been discharged from employment by the defendant.— *A. G. S. v. Burgess*, 114 Ala. 587; *L. & N. v. Tegnor*, 125 Ala. 593. Charge C was correct.—75 S. W. 689; 42 S. E. 610. Counsel discuss the other charges but without citation of authority.

SAYRE, J.—Counts 1 and 2 were framed under the first subdivision of the employer's liability act (Code

1907, § 3910) as for an injury caused by a defect in the works, ways, machinery, or plant used in the business of the defendant; the particular defect alleged in the first being the defective condition of the lubricator on the engine plaintiff was employed to run, and in the second that the water valve of the lubricator on the engine was broken and unfit for use.  The third counts upon the negligence of one McDowell to whom superintendence was instrusted; the fourth, upon negligence of McDowell in giving orders or directions to which plaintiff was bound to conform and did conform; the fifth, upon a breach of the master's common-law duty to exercise reasonable care in the selection of the fellow servant by whose negligence the plaintiff suffered.

Defendant's second and third pleas set up plaintiff's contributory negligence, in that, after discovering the defective condition of the lubricator, he negligently failed to shut off the steam pressure and failed to use the auxilaries which would have prevented the injury. The fourth that, after discovering the defect, plaintiff proceeded to make an investigation of the lubricator, and negligently failed before doing so to shut off the steam pressure.  The argument against the pleas is that they fail to aver that plaintiff had time or opportunity to shut off steam after discovering the defect in the lubricator.  A plea must contain a succinct statement of the facts relied on in bar.  The first of the pleas is that, after discovering the defective condition of the water valve on the lubricator, plaintiff negligently failed to shut off steam.  They are not intended to assert the proposition that after knowledge of the defect plaintiff had opportunity to choose between assuming the particular risk or abandoning the master's service, and chose to assume the risk, for it is inferable that he learned of the defective lubricator while operating his

engine upon the road where neither his duty to his master nor to himself required that he should incontinently abandon his machine. The idea rather is that, after learning of the defect and of the danger which the continued use of the defective appliance threatened, for it was a defect within the meaning of the statute only as it threatened danger, he failed to make use of an immediately available mean of averting the danger. In *Tennessee, C. I. & R. R. Co. v. Burgess,* 158 Ala. 519, 47 South. 1029, the plea was that "plaintiff knew of the defect in the mine of which he complains, and of the danger arising therefrom, and with such knowledge remained in said mine." In respect to this plea the court said: "The correctness of the court's ruling, sustaining the demurrer to this plea, is obvious. For aught that appears on the face of the plea, the plaintiff may have acquired the knowledge alleged only a moment before the roof fell, and not in time to save himself by even a hasty retreat." The difference between that plea and this is to be found in the allegation of this that "the plaintiff negligently failed," etc. A statement, in form a conclusion, approaches occasionally so nearly the ultimate facts as to make the effort at further analysis futile for the practical purposes of pleading. An averment of negligence, whether stated as a cause of action or as a defense, is not required to be as specific as the proof essential to support it. Further, where from the facts as they are and as they must be alleged different minds might draw different conclusions, it is the office of the pleader to draw the conclusion necessary to the maintenance of his action or defense as the case may be. This finds illustration in the case at bar. The allegation that after discovering the defect the plaintiff negligently failed to shut off steam may amount to a conclusion in some sort, but it is no more a conclusion than

would have been the allegation that he failed after he had time, etc., proposed by the appellant as a sufficient and necessary alternative. It was not necessary to charge, in so many words, that a reasonable time within which to turn off steam intervened after the discovery by plaintiff of the defect, since that was necessarily embraced in the averment that after discovery he negligently failed, etc. In our judgment the pleas, as for any objection taken to them, were sufficient. In *Osborne v. Alabama Steel & Wire Co.*, 135 Ala. 571, 33 South. 687, the plea was that the plaintiff continued in the service of the defendant after he knew or could have known of the defect by the exercise of due care. The point of the decision was that the plea was bad because it imposed on the employe the duty to use care to discover the defect; whereas, he had a right to assume, and to act upon the presumption, that the defendant had not been negligent and that there was no defect. That decision is malapropos of any question here involved.

The plaintiff when testifying as a witness was asked by his counsel to state whether or not the auxilaries could have been used on the lubricator. In view of the special defense interposed, it was the right of plaintiff to have his testimony as to the condition of the auxiliaries go to the jury. But the question by which he sought that end was not insusceptible to unfavorable criticism. The true inquiry, of course, was as to the condition of the auxiliaries—whether they were defective, or whether any other fact stood in the way of his use of them under the circumstances then obtaining—and such fact was easily capable of statement; whereas, the question asked for a conclusion. But, however that may be, the plaitiff on examination both by his own counsel and by counsel for the defendant did

testify with great distinctness that he had tried to use the auxiliaries, but had found that they were "out of fix," and would not work, and again that he could not work them. No more could have been gotten out of the witness by the question propounded than was in fact drawn out on both direct and cross examination, and so the ruling was not hurtful to plaintiff's case.— *Kroell v. State,* 139 Ala. 1, 36 South. 1025; *Central of Georgia v. Simons,* 161 Ala. 337, 50 South. 50.

The trial court would not permit the plaintiff to ask the witness Reaves how long Fisher had been working for the defendant. It appeared that, when plaintiff went to defendant's roundhouse in Anniston to prepare for his trip, the lubricator was leaking at the water valve; that plaintiff reported this fact to McDowell, the night foreman, who thereupon directed Fisher, an employe of defendant, to repair it, which the latter undertook to do. It is supposed that these facts, in connection with the subsequent accident, and the fact which plaintiff sought to develop by this question, tended to show that Fisher was incompetent, and negligence on the part of the defendant in his employment to do the work intrusted to him. In this connection, also, the plaintiff reserved an exception to a ruling of the court which denied to him the advantage of an opinion by the witness Pace (not the plaintiff) that at a time previous to plaintiff's injury he had been employed at the shops, where we presume repairs were made, and that the men employed there were not competent machinists. But the witness had deposed that he did not know Fisher, and obviously his opinion was of no probative value as to his competency, and the court properly refused to allow the record to be incumbered by it. The happening of the accident may have had a tendency to prove the incompetency of Fisher. If it had been one of a series of

similar accidents, traceable to his negligence, it would certainly have had such tendency; but, standing alone, it was not effective in proof of the contention that defendant had been negligent in his employment in the beginning, or that it had been negligent in failing to acquire knowledge of his incompetency during the employment and before the accident; nor would its probative force in that direction have been aided or enhanced by the answer, which we presume the plaintiff expected, that he had been a long time in the defendant's employment, or, to state the proposition as it is stated by the counsel for appellant, that he had been in the employment of defendant at the time when the witness Pace undertook to say that the defendant's employes about the shop were generally not competent machinists. This was the evidence to support the fifth count, and its totally ineffectual character justified the court in giving the general affirmative charge for the defendant as to that count.

The witness Reaves had been testifying about the lubricator and the water valve which was a part of it. Defendant's counsel asked the witness:. "An expert engineer could not see through there and see those threads unless he took it out"—referring to the threads on the water valve by which it was held in place as a part of the lubricator. The question asked for an opinion in respect to a matter which the jury, no matter how inexpert, understood as well as the witness, no matter how expert, and might well have been omitted. The witness, with possible excess of caution, answered that he did not know. The question and answer were obviously harmless, and we have considered them thus in detail only because they are insisted upon as involving reversible error.

That an inexperienced man might in a contingency think that the valve in a lubricator was all right, when in fact it was not, had no tendency towards showing that Fisher was inexperienced, still less that he was incompetent. There is no merit in the tenth assignment of error.

The witness Fitzgerald was shown to be an expert machinist. He had testified that, if a water valve does not leak when the steam is turned on, that would indicate that it is all right, and that one could put a water valve in a lubricator so that it will not leak and yet it may be fractured. On cross-examination he was asked by defendant: "Isn't it true that many times things like that water valve blow out on engines where steam is used and the very best machinist, the most experienced machinists, would not know that there was any defect in it until it blew out?" Plaintiff objected, assigning no grounds. The witness, with commendable prudence, answered: "There are exceptions to all rules." The trial court was not required to cast about for tenable objections to the question. Nor do we, after considering appellant's brief, find reversible error in the ruling below. If the witness had answered the question affirmatively, his answer would have had a tendency to show a general state of expert knowledge in respect to things of the sort involved, or rather a general limitation upon expert knowledge, proper for the consideration of the jury in weighing his testimony and the testimony of the other witnesses in respect to the probable manifestation of defect in the water valve. So of the twelfth assignment of error.

Burns, a witness for plaintiff, testified that on the occasion of the trip on which plaintiff was injured, evidently referring to the time when plaintiff was preparing for the trip, he heard the plaintiff ask McDowell if

the work had been done on the engine. This question referred to work on the leaky water valve, as other parts of the evidence make sufficiently clear. The plaintiff told McDowell, according to the witness, that if the work had not been done he was not going out on the engine. Plaintiff then offered to prove by the witness that, after plaintiff had left the room in which the conversation occurred, McDowell asked Fisher if he had done the work to which plaintiff had called his attention, and that Fisher replied: "Yes, but the lubricator is broken. It may make the trip." The court seems to have sustained an objection on the ground that the proposed evidence was hearsay. The relevancy and competency of the proposed evidence is to be found in the fact that it went to show, not that the lubricator was in a defective condition, for as to that it was hearsay, but that McDowell had notice of the defect which other evidence tended to prove. The defendant was charged with responsibility for the alleged negligence of McDowell in two respects upon which this testimony shed light: He had charge of the repairing of the engine, and he was intrusted with superintendence, and the character of his conduct in both regards was to be affected by his notice or knowledge of the alleged defect. It therefore seems clear enough to us that the proposed testimony should have been admitted for the purpose of tracing knowledge or notice of the alleged defect to McDowell. We cannot assume on the facts in the record, nor do we think the trial court could assume in passing upon this testimony, that after notice received in the manner indicated by the testimony of Burns, if it was so received, McDowell had or had not time in which to have repaired the engine or, in default thereof, to have prevented plaintiff from going out upon the engine. It was for the jury to do that.

Fisher, beyond controversy, had repaired the lubricator. It was therefore utterly irrelevant to show that his co-employe, Williams, was an incompetent mechanic. And the trial court so held.

Buckpitt, a witness for defendant, and an engineer in its employment, testified that he had taken the same engine out on a trip on the day previous to that on which plaintiff was alleged to have been injured. Thereupon the defendant offered to read in evidence a paper writing containing a report made by him (Buckpitt) on his return from that trip as to the condition of the engine. The report showed "valves O. K.," but nothing as to the lubricator or its water valve specifically. The witness, speaking of his own knowledge and recollection, and without the need of refreshment, testified that at the time of the report the water valve on the lubricator was not leaking. Doubtless the report was allowed to go to the jury on the authortiy of *Foster v. Smith,* 104 Ala. 248, 16 South. 61; *Mooney v. Hough,* 84 Ala. 80, 4 South. 19, and *Hirschfelder v. Levy,* 69 Ala. 351. Certainly it was not competent within the rule laid down in *Acklen v. Hickman,* 63 Ala. 494, 35 Am. Rep. 54. We think it can hardly be said that the case is brought within the reason of *Foster v. Smith* and that line of cases. The rule there established is a rule of convenience rather than a rule of evidence, and has been applied in cases where, a witness having testified out of his own independent recollection to a considerable number of items, a memorandum of them is permitted to go to the jury lest they forget. But here there was but one item of proper inquiry, i. e., the condition of the lubricator or its water valve. The witness needed no memoradum to refresh his memory, nor did the jury. The memorandum was understood, it seems, to show in a negative way only that the lubricator or

its water valve was in good repair when the engine left the hands of the witness. We do not think it proper that it should go to the jury, though we do not affirm reversible error of the action of the court in that regard, for doubtless it had no prejudicial effect upon plaintiff's case.

Plaintiff had been insured against accidental injury with the Brotherhood of Locomotive Engineers; and against his objection Buckpitt was allowed to testify that as secretary of the order he had paid to plaintiff the sum of $4,500 for the loss of his eye, which was the injury for which he sought compensation in this suit. This evidence was limited by the court at the time of its admission and subsequently by written charges as going to show a motive on the part of the plaintiff for the loss of his eye. Indeed, charges "Y" and "Z," given at the request of plaintiff, appear to have eliminated, as well as charges could, this evidence from the cause. But erroneous rulings on the admissibility of evidence cannot be cured by charges. See *Harbour v. State,* 140 Ala. 103, 37 South. 330. If the evidence ruled upon relates to an issue which is subsequently removed from the case in some proper way, or becomes immaterial because in any event the cause must be determined on a different issue the ruling becomes harmless and of no consequence.—*Stevenson v. Whatley,* 161 Ala. 250, 50 South. 41. Such was not the case here. All issues were litigated to the end, and their determination remained necessary to a proper verdict. The question of error must then be decided without regard to the charges given. It was shown that some time after his alleged injury the plaintiff's eye was removed by surgeons, that he had urged its removal a month earlier but after the time of the alleged injury, and that it removal or loss was the condition upon which he was to receive the money paid to him by the

Brotherhood. It also appeared without conflict that finally the surgeons had advised the plaintiff to have the ·eye removed and had removed it on their own judgment as to the necessity of that course. One contention made by the defendant, which found support in the evidence, .and upon which probably the jury determined the case, was that the plaintiff had not been injured by the blow·ing out of the water valve, but that he was engaged in ·an effort to make the best of the opportunity afforded by that occurrence to claim damages of the defendant ·for a trouble with his eye for which the defendant was in no sense responsible. Ordinarily it is not competent to show compensation for an injury where it comes from a collateral source wholly independent of the defendant as illustrating either the circumstances of the ·accident, for that it has no tendency to do, or for abatement of damages, for such compensation is as to the de·fendant res inter alios acta with which the defendant has no concern. Nor do we understand appellee's argument to take issue with the proposition just stated. The argument is, as we understand its effect, that the fact of the receipt of the insurance money could be weighed as affecting the general credibility of the plaintiff; in other words, it showed interest. But plaintiff no longer had a questioned or litigated interest in the insurance money, and to permit the defendant to go into his orig·inal right to it, or to question his good faith in the re·ceipt of it, would have introduced an issue with which the case in hand ought not to have been burdened and beclouded. We are unable to say that the introduction ·of this evidence was harmless, and feel constrained to ·adjudge that its admission was error.

Witness Clements was the conductor on the train which plaintiff was pulling, and deposed that he was on the engine at the time and place when and where plain-

tiff located the accident which resulted in his inury,. and saw no occurrence of the sort. It was competent for the plaintiff to ask the witness whether he violated a rule of his employer when he rode upon the engine for the purpose of discrediting his statements, to what extent the jury should say, but he had no right to argue in the question the probative force of the matter sought.

Charge "C," given at the request of the defendant,. asserted that plaintiff was not entitled to recover if the loss of his eye was the result of an accident. Abstractly the charge was correct, for "accident" as there used meant inevitable accident, i. e., inevitable in the sense that it could not have been prevented by the exercise of that degree of care which the employer is required to exercise for the safety of his employes; in other words,. accident without the concurring negligence of the defendant. If the plaintiff apprehended misconception of the charge by the jury, he should have asked an explanatory charge.

We will not prolong this opinion by dealing in detail with the remaining assignments of error. Such of them as have been argued have been considered and found to be either rather obviously unsound or to have had antidote in other parts of the record. What we have said will suffice for the future progress of the case.

Reversed and remanded.

DOWDELL, C. J., and MAYFIELD, J., concur. McCLELLAN, J., concurs in the conclusion, but thinks pleas 2, 3, and 4 should have been held bad, and relies upon *Osborne v. Ala. S. & W. Co.,* 135 Ala. 571, 33 South. 687, and *T. C. & I. Co. v. Burgess,* 158 Ala. 519, 47 South. 1029.