[Alabama City, Gadsden & A. Ry. Co. v. Bessiere.]

# Alabama City, Gadsden & A. Ry. Co. v. Bessiere.

## *Damages for Death of Intestate.*

(Decided November 7, 1914.   66 South. 805.)

1. *Carriers; Duties; Competent Servants.*—Carriers of passengers must use reasonable care and diligence in the selection of competent servants.

2. *Same; Passengers; Relation.*—The evidence in this case examined and held insufficient to establish that intestate was at a certain station to offer himself as a passenger upon defendant's street railway.

3. *Master and Servant; Injury to Third Person; Dangerous Instrumentality.*—Persons or corporations using instrumentalities which are very dangerous if not skillfully handled, should exercise due care and diligence to have competent employees in charge thereof, and where the services involve special knowledge or experience, individuals without those qualifications should not be placed in charge.

4. *Same; Incompetent Servants.*—Where the action was for injuries due to the employment of incompetent servants by defendant, plaintiff has the burden to show that defendant knew, or by reasonable diligence, could have known of the incompetency of the servant.

5. *Same.*—Negligence is not synonymous with incompetency as the most competent may be negligent; hence, a servant is not shown to be incompetent by an instance of his negligence, nor is knowledge of such an instance of negligence notice to the master of his incompetency.

6. *Same; Proximate Cause.*—Where a person is injured because of the negligence of an incompetent servant, the master is not liable by reason of having employed such servant unless the incompetency was the proximate cause of the injury.

7. *Street Railways; Instructions.*—Where the complaint contained a count charging that the accident was due to defendant's negligence in retaining and employing an unskillful, inexperienced and incompetent motorman, and the evidence, although tending to show that the motorman's vision was defective, failed to show that defendant knew, or by reasonable diligence, could have known of such defective vision, it was error to refuse to defendant the affirmative charge as to that count.

8. *Same; Wrongful Death; Discovered Peril; Burden.*—Where the action was for death due to the motorman's negligence after discovery of the peril of intestate, plaintiff had the burden to show that the motorman had actual knowledge of intestate's peril under such circumstances that time, and opportunity for prompt, ordinary and skillful use of the appliances at hand to stop the car, or give warn-

ing, were afforded, and if they had been properly employed, the injury would have been averted or materially minimized.

9. *Same.*—Where the action was for death by being struck by a street car due to wilful or wanton misconduct of the motorman, the burden was on plaintiff to prove that the motorman had actual knowledge of the peril of intestate and had time and opportunity to avail himself of means to avert the accident.

10. *Charge of Court; Reasonably Find; Reasonably Satisfied.*—In a cautionary instruction, it was error to employ the phrase "reasonably find" in connection with the drawing of inferences by the jury, from facts hypothesized, instead of the phrase, "reasonably satisfied," which presents a very different conception.

APPEAL from Gadsden City Court.

Heard before Hon. JOHN H. DISQUE.

Action by Leonie Bessiere, administratrix, against the Alabama City, Gadsden & Attalla Railway Company. From a judgment for plaintiff, defendant appeals. Reversed and remanded.

The following are the counts of the complaint ordered to be set out:

(12) "Plaintiff claims of defendant the other and further sum of * * * as damages, for that heretofore, to wit, * * * defendant was engaged in the business of operating a street railway in the city of Gadsden, Alabama, said railway being equipped with cars propelled by electricity and carrying passengers for hire; and plaintiff avers that on said date, in said city, at a place commonly known as Brown's Crossing, or Brown's Station, a place where passengers were regularly taken aboard defendant's cars, and after the hour of 7 o'clock in the evening, when it was dark, plaintiff's intestate was waiting to take passage on one of defendant's cars; and plaintiff avers that she was damaged in this: That defendant negligently, carelessly, or recklessly permitted one of its cars, upon which plaintiff's intestate was waiting to take passage, to approach said crossing at a great rate of speed, and in the darkness, and without having said car under proper con-

trol, and thereby negligently, carelessly, or recklessly ran said car against plaintiff's intestate, and he was thereby killed," etc.

(13) Same as 12, down to and including the words, "plaintiff's intestate was waiting to take passage on one of defendant's cars," and adds: "And plaintiff avers that she was damaged in this: Defendant negligently had in its employ as motorman of one of its cars one W. D. Duncan, who was unskilled, inexperienced, or incompetent, and the said Duncan at the time and place aforesaid ran said car against plaintiff's intestate, and thereby killed him; and plaintiff avers that he was so killed by reason of the negligence of defendant in having said Duncan in its employ as such motorman."

(A) "The plaintiff, suing as the administratrix of the estate of Henry Bessiere, deceased, claims of defendant the sum of $25,000 as damages, for that on or about February 1, 1911, defendant was engaged in the business of a common carrier of passengers, at the time propelling a car by electricity at or near Brown's Crossing or Brown's Station, in the city of Gadsden, * * * and then and there, through its servant or agent, one Duncan, wantonly, willfully, or intentionally drove or propelled its said car upon, over, or against plaintiff's intestate at or near said crossing or station, bruising, crushing, and killing him."

(AA) Same as A, down to the stars therein, and adds: "Having and operating cars propelled by electricity, and on said date had a stopping place to take on and let off passengers at Brown's Crossing, or Station, in said city, at which place, when the usual signals were given, said cars stopped for said purpose; and plaintiff avers that it was the duty of defendant, its agents, and servants in charge of the operation of said cars at said stopping place to use due care in op-

erating the same, so as not to injure those offering themselves as passengers, and seeking to board said cars at said place; and plaintiff avers that at said place, on said date, her intestate in the usual manner offered himself as a passenger, and was seeking to board one of said cars of defendant, and a motorman in the service of defendant, and in charge of the operation of said car, negligently failed to use due care in the operation of said car at said time and place, and as a proximate consequence thereof ran said car over and against plaintiff's intestate, and killed him."

(B) Same as AA in the statement of fact, and adds: "While plaintiff's intestate was on or near the track of defendant's said street railway, her intestate was run over or against by one of defendant's cars, and killed; and plaintiff avers that the death of her intestate was proximately caused by the negligence of one Duncan, a servant or agent of defendant, in this: That said Duncan, while in charge of said car as motorman, discovered before plaintiff's intestate was killed that said intestate was placed in imminent peril of great bodily harm or loss of his life by the approaching car of which he was in charge or control as said motorman of defendant, and after said discovery by him he so negligently managed, ran, or controlled said car as to cause it to run over or against plaintiff's intestate, and kill him."

The pleadings filed were the general issue to the whole complaint, and the following pleas to counts 12 and 13: (2) Contributory negligence, in failure to stop, look, and listen for an approaching car before he went upon the railroad track. (3) Same as 2. (4) Proximate contributory negligence, in that he stood or loitered on the railroad track, or so near thereto that a car traveling therein would strike him, and did not

[Alabama City, Gadsden & A. Ry. Co. v. Bessiere.]

keep a lookout or listen for an approaching car, etc. (5) Same as 4. (6) Proximate contributory negligence, in that he tried to board said car while it was moving, in a careless, listless, and negligent manner, thereby suffering said car to knock or throw him down. (7) Proximate contributory negligence, in that he tried to board said car while it was running at a rapid and dangerous rate of speed. (8) Same as 7. The same pleas were filed to counts A, AA, and B.

HOOD & MURPHREE, for appellant.

O. B. ROPER, and E. O. McCORD, for appellee.

McCLELLAN, J.—A sufficient statement of the outline of, and many of the details presented in, this litigation will be found set forth in its report on former appeal.—179 Ala. 317, 60 South. 82. On the succeeding trial, the issues made by the plaintiff's pleading, and not denied submission to the jury, were counts 12, 13, A, AA, and B. Additional to general traverses of these counts, the defense interposed were acts of contributory negligence in varied forms. The reporter will summarily set forth the indicated counts, and the pleas addressed to them, in his recital of the facts. The legal principles applied to the case, in all its features, have been too often and recently stated to be now at all unfamiliar.

Count 13 ascribed Bessiere's death to the unskillfulness, inexperience, or incompetency of Motorman Duncan, in breach of the common-law duty of exercising reasonable care in the selection or continued retention of its servant.

(1, 5) It is the duty of those serving the public as carriers of passengers to use reasonable care and dil-

igence in selecting competent and careful servants. The law requires that companies using instrumentalities which, if not skillfully handled, are very dangerous, shall exercise due care and diligence to have competent employees in charge thereof.—*Holland v. T. C. I. & R. A. Co.*, 91 Ala. 444, 8 South. 524, 12 L. R. A. 232; 6 Cyc. pp. 596, 597; *Olsen v. Citizens' Ry. Co.*, 152 Mo. 426, 54 S. W. 479. The observance and exercise of a like degree of care is required of the master in discovering and remedying any incompetency which may afterwards be developed.—*Holland's Case, supra.* Where the service involves special kiowledge or experience, only individuals having qualification therefor should be employed. But the employer is not an insurer in the premises; for the master meets the obligation of duty in that regard by observing and exercising reasonable care and diligence to engage and to retain employees possessing the qualification stated. In order to show a breach of duty by the master in such circumstances, it must be made to appear that the master knew of the servant's incompetency, or by the exercise of reasonable diligence could have ascertained the fact.—*Penn. Coal Co. v. Bowen*, 159 Ala. 165, 49 South. 305.

Now, as to incompetency: That deficiency in a servant is not shown by an instance of negligence on the part of the servant; nor would that be sufficient to allow the imputation to the master of notice of his incompetency.—*Conrad v. Gray*, 109 Ala. 138, 19 South. 398; *Pace v. L. & N. R. R. Co.*, 166 Ala. 519, 52 South. 52. "Negligence is not synonymous with incompetency. The most competent may be negligent." Furthermore, the injury complained of must have been the proximate result of the servant's incompetency.—*First Nat. Bank v. Chandler*, 144 Ala. 286, 39 South. 822, 133 Am. St. Rep. 39.

(6) The approval given the third count in *Penn. Coal Co. v. Bowen, supra,* would seem to be apt authority for affirming the sufficiency of count 13 here under review. Assuming its sufficiency, and also assuming the quite doubtful fact that there was evidence tending to show defective vision of the motorman, after careful review of the evidence bearing upon that count's material averments, it is clear that the evidence wholly failed to sustain the essential obligation—imported by the term "negligently" as therein employed—that this master knew, or did not observe and exercise reasonable diligence to discover, that the vision of the motorman was defective. There was no evidence going to establish any notoriety of the asserted fact with respect to his vision. The defendant requested the affirmative charge as to count 13, and its refusal was error.

(7) Count B ascribed intestate's death to negligence of the motorman after the discovery of intestate's peril. It has long been established here that negligence to liability of an operative, in such cases can only be predicated of the operative's actual knowledge of the peril of the party injured and under such circumstances as that time and opportunity for the prompt, orderly, and skillful use of the appliances at hand to stop the carrier's vehicle, or to give warning to the unadvised imperiled party of its approach, or both, was afforded, and, if employed as stated, would have availed to avert the injury, or to materially minimize the damnifying result.—*L. & N. R. R. Co. v. Young,* 153 Ala. 232, 45 South. 238, 16 L. R. A. (N. S.) 301; *Anniston El. Co. v. Rosen,* 159 Ala. 195, 48 South. 798, 133 Am. St. Rep. 32.

The evidence is wholly silent in respect of time and opportunity in and for which the duty stated before could have been performed, and injury averted, or the

damnifying result minimized. The burden of proof was on the plaintiff to establish the negligence charged. The place of injury was a station on the line of a street railway *in the City of Gadsden.* The statutes affecting the burden of proof where the injury is caused by a railroad's operation, as distinguished from the operation of street car lines, do not apply to this plaintiff's case.—*Appel v. Selma Street Ry. Co.,* 177 Ala. 457, 59 South. 164; *Ex parte Selma Street Ry. Co.,* 177 Ala. 473, 59 South. 169. If it should be assumed that intestate was on the track before the oncoming car, and that he saw intestate's peril ahead, still there could be no recovery on count B, for the evidence does not show at what point, at what distance from the imperiled party, the motorman became *actually aware* of his peril, to say nothing of the right of an operative to presume, until it otherwise appears, that an adult person, walking or standing, will leave a place of peril before it is too late.—*Anniston El. Co. v. Rosen, supra.* Without evidence to indicate that fact, it was not possible to conclude to negligence under count B. The fact that there was, on the occasion, a good headlight burning on the car, and the further fact that the motorman was looking ahead over the track and its borders at the place of injury, and the further fact, assumed for the occasion, that intestate was on or dangerously near the track, have no tendency to show the point, the distance, at which the operative became aware of intestate's peril, so as to apply to his conduct or inaction the rule of duty before restated. The evidence or any inference from it negatives the idea, allied with the facts assumed as stated, that intestate may have stepped upon the track immediately in front of the car, within such nearness to it as to have rendered impossible any action that would have been preservative. The court

erred in refusing to the defendant the general affirmative charge as to count B.

(8) Count A relied for recovery upon the theory that intestate's death was due to willful or wanton misconduct on the part of the motorman. The evidence was not sufficient to justify the submission of the issues tendered by this count to the jury; the affirmative charge for defendant, as to this count, having been requested. Essential elements of willful or wanton wrong under count A were the motorman's actual knowledge of intestate's peril *and* time and opportunity to avail of means to avert his injury. Until there was evidence tending to show the acquirement of that actual knowledge at such distance from intestate, then imperiled, as that time and opportunity were afforded in which the collision would, if such means had been properly avalied of, have been avoided, there was no basis upon which to rest a finding of wanton or willful wrong as charged in count A. Certainly proof of injury, by a street car or a locomotive, of one known by the operative thereof to be in peril at some undefined distance, ahead of his machine, *not indicated by the evidence,* will not suffice to show, in any degree, that the operative caused or permitted the injury with conscious indifference to probable consequences or with an intention to injure, unless the injury is inflicted by the reckless disregard of consequences found, upon occasion, to attend the operation of such agencies at a great speed over places at which the operative, from his own knowledge, knows there is likely to be people or property in exposed positions. The relative position of both the operative when he is advised of the peril and of the person imperiled must, in such cases as count A describes, be shown in the evidence. When that is dis-

closed, the duty of the operative may be understood, and its breach vel non determined.

We think there was evidence requiring the submission to the jury of the issues made by count 12. There was evidence and reasonable inference from evidence tending to show that intestate was stricken while on or dangerously near the track at the station called "Brown's Crossing" or "Brown's Station." The count, however, states a cause of action grounded on simple negligence.

(8) Material averments of count AA were without any support in the evidence. It is averred therein that intestate offered himself for carriage as a passenger, by this carrier, in the usual manner, and was seeking to board one of said cars of the carrier. The only evidence on the subject of intestate's relation of passenger to this carrier was his statement, on leaving home a short while before his death, that he was going to take passage on the street car at that point. That he was at the station usually used by him when stricken, of course, lends support to his declaration of purpose on leaving home. But these circumstances do not tend, in any degree, to show what he did at the station in respect of offering himself for carriage as a passengar. In fact, there is an entire absence of evidence to show what he did upon or after arrival. His being stricken by the car, if so he was, and the presence of the lifeless body on the margin of the pile of ashes or cinders, put there to aid passengers entering or leaving the cars at that station, did not effect to indicate or describe any act of his in respect of the stated averments of count AA. It was supposed on the trial that some advantage accrued to the plaintiff because of an asserted custom whereby cars were wont to be stopped at this station by the acts of people desiring to get aboard,

which acts consisted of signs with the hands or feet, made while on or beside the track, or by holding a light of some character over the track—all this with the view to attracting the attention of the motorman to the fact that a passenger was waiting for carriage. This station was a "flag station." If the custom asserted should be accorded the fullest acceptance and binding quality, there is no evidence whatever that intestate did aught to avail of it—that he sought to avail of it. So far as the present record is concerned, it is pure assumption to say that he did anything under or according to the asserted custom. All evidence pertaining to that asserted custom might well, at the final stage of the trial, have been excluded. If there had been any evidence tending to show Bessiere's action at the station within the asserted custom, it might then have been retained in the case. However, this case presents no such issue; for this intestate is not shown to have sought to have *acted, at the station,* under the custom asserted.

(10) In a number of the special instructions given to the jury at the instance of the plaintiff, the degree of conviction, on findings of fact by the jury, necessary to allow the conclusions deduced as from hypotheses therein affirmed, is misstated by the employment of the phrase "reasonably find." The legal requisite is "reasonably satisfied"—a very different conception from that expressed in "reasonably find."

As appears, this court is of the opinion that only count 12 presented a jury issue on the record here. On the retrial, to which remandment may lead, more attention should be accorded by the litigants to evidence referable to the averment of want of *proper control* of the car when approaching a flag station, such as this one was. Courts have no serviceable common knowl-

edge on this subject; and the evidence now presented, perhaps, does not adequately discover the matter.

The judgment is reversed, and the cause is remanded. Reversed and remanded.

SAYRE, DE GRAFFENRIED, and GARDNER, JJ., concur.