**TEXAS BREEDERS & RACING ASS'N, Inc.,**
**v. BLANCHARD et al.**

No. 7792.

Circuit Court of Appeals, Fifth Circuit.

Jan. 15, 1936.

Harry Susman and Albert P. Jones, both of Houston, Tex., for appellant.

E. A. Berry, Barksdale Stevens, Roy L. Arterbury, and Mark Edwin Andrews, all of Houston, Tex., for appellees.

Before FOSTER and SIBLEY, Circuit Judges, and DAWKINS, District Judge.

DAWKINS, District Judge.

This is an appeal from a verdict and judgment in favor of appellees. Appellees, plaintiffs below (who will be referred to hereafter as plaintiffs), claim damages of appellant (referred to hereafter as defendant), for personal injuries to Tommy Blanchard, a youth about seventeen years of age, under the following circumstances:

The defendant, as its name implies, is engaged in operating a race track and incident thereto permits owners of horses to train and keep their jockeys or riders on the premises. Young Blanchard, along with other boys of similar age, was undergoing training to become a jockey, and was required to eat and sleep in quarters on the race-track property. Defendant employed one L. A. Eaves as a night watchman, to protect its property and to see that the jockeys and boys in training demeaned themselves properly, retired on time, etc. He was required to carry a gun in discharging the duties of guarding the property. At the time of the accident, which resulted in the injury, Eaves had gone into the kitchen of the living quarters of the jockeys and boys in training, having on him his pistol, which one of the boys requested he be permitted to examine. This request was granted, and when the gun was returned to Eaves he proceeded to show those present how he could twirl it on his fingers, during which demonstration the pistol was discharged and seriously wounded young Blanchard, who was standing some ten feet away.

The assignments of error are mainly to the refusal to direct a verdict for defendant.

There are two grounds upon which liability is claimed, to wit:

(1) That Eaves, being an employee of defendant, was grossly negligent in handling the gun while in the scope of his employment; and,

(2) The defendant was guilty of negligence in hiring Eaves to perform the duties of his employment in view of his past record and reputation.

On the first proposition, there was no serious dispute as to the facts which were as above stated and therefore no issue to submit to the jury. The court should have directed a finding on the question of law, which was: Was Eaves acting within the scope of his employment when the gun was discharged, or had he turned aside for purposes of his own? He was employed to protect the defendant's property and that of its tenants, and for that purpose was furnished or provided himself with a pistol. It is true that it was his duty to be in and about the premises, to see that the jockeys and boys in training demeaned themselves properly and retired at proper hours; but it was no part of his employment to attempt a demonstration of his skill in handling the pistol. This case cannot be distinguished in principle from that of Galveston, H. & S. A. Ry. Co. v. Currie, 100 Tex. 136, 96 S.W. 1073, 10 L.R.A.(N.S.) 367. In the latter case, the employee was charged with the duty of cleaning out the fire box of a locomotive and for that purpose was furnished with an air hose, carrying strong pressure; for his own amusement and that of bystanders, he turned the stream of air on the buttock of another man, which penetrated his rectum and ruptured the intestines, causing the death of the victim. As has been suggested by counsel for plaintiffs in brief, if, in discharging his duties of cleaning the engine, he had carelessly swung the hose in position to cause an injury, the railway company would have been liable, and such in effect was the holding of the Texas court. So here, if Eaves had, in the course of his movements around the premises which he was employed to guard, handled his pistol in a careless manner and caused the present injury, his employer would have had to make good any damage thus caused. The difference between liability and the want of it turns upon the proposition as to whether the agent carelessly performs what he was employed to do, or, as a free moral agent, turns

aside, for his own purposes or amusement, and consciously does something not reasonably within the scope of his employment. It was no part of his duty to demonstrate his skill in twirling the pistol on his finger; nor was it contemplated that he should entertain his charges in that manner, or that the pistol would be used in discharge of any other duty toward them; it was intended to keep trespassers and thieves away from the property. See Crawford v. Rice (C.C.A.) 36 F.(2d) 199, and authorities therein cited; American Ry. Express Co. v. Tait, 211 Ala. 348, 100 So. 328.

Plaintiffs offered no evidence in support of the contention that defendant was guilty of negligence in employing Eaves. That tendered by defendant was as follows:

The company needed a night watchman, and its assistant secretary, Charak, applied to Cap. Hammond of the Texas Rangers, who had charge of the district in which the race track was located, for a man with the "power to arrest." Hammond furnished Eaves, who held a commission as a special ranger. Defendant paid his salary. Charak had never seen Eaves before and relied on the recommendation of Hammond as to his qualifications. Hammond was given free rein in handling the men used as guards or watchmen around the race track. He made changes from time to time, both in personnel and in placing them at different points on the property. Defendant requested Hammond to furnish it with experienced officers sufficient to take care of the situation, but did not want a "lot of them," but "as few as possible." He recommended Eaves as being the "type of man that could go out there and do the job." Hammond had worked with him in the oil fields and other places. Eaves had been recommended by the sheriffs at Conroe and Huntsville. Hammond knew Eaves had killed a negro while under arrest, and heard that he had killed another. Eaves was a young man about twenty-five years of age, aggressive, and, in view of Hammond's knowledge of him and the recommendations of other officers, was thought to be a proper man for the position. Nothing came out in the evidence to show that the conduct of Eaves in killing the negro was unjustified or not in defense of his own life.

In view of the facts thus developed, we find nothing to sustain the contention that

defendant was negligent in employing Eaves. Article 6573 of the Texas Revised Statutes provides: "No person shall be appointed to the ranger force who is not a citizen of the United States and of Texas, and preference shall always be given to discharged soldiers holding certificates of honorable discharge from the United States Army. All officers and men selected shall be sober men of good moral character and sound judgment, shall furnish satisfactory evidence thereof, and shall conform to such qualifications as the Governor shall prescribe for appointment. All applications for appointment to the ranger force shall be made to the Governor, who shall pass upon the qualifications of each applicant."

▆▆▆ In the absence of knowledge of a bad reputation or other disqualifications, defendant was entitled to assume that those charged with the responsibility of appointing members of a ranger force had performed their duties in making a selection, and that an officer so appointed was competent. The burden was upon plaintiffs, not only to prove the incompetency of Eaves, but to go further and show that by the exercise of reasonable care defendant could have discovered that fact. No effort to do this was made, but plaintiffs relied mainly upon the contention that the conduct of Eaves in twirling the gun was so grossly negligent as to demonstrate incompetency. However, granting that he was guilty of gross negligence, this does not serve to prove knowledge of his incompetency on the part of defendant. See Folsom-Morris Coal Mining Co. v. Scott, 107 Okl. 178, 231 P. 512; Burns v. Texas Midland R. R. et al. (Tex.Civ.App.) 167 S.W. 264; Alabama City, G. & A. Ry. Co. v. Bessiere, 190 Ala. 59, 66 So. 805.

The verdict and judgment are reversed.

SIBLEY, Circuit Judge (concurring specially).

There was a large recovery. I think there should be a new trial because of the erroneous admission over appropriate objections and exception of testimony as to the prospective earnings of the injured boy. The boy was not a jockey, but only an apprentice. A witness who professed to be experienced was allowed to testify in answer to a question as to what the boy would probably earn during his first year as a jockey: "Well, I thought he would average anywhere from $7,000 to $8,000 per year after he was broken in. I figure he would make that." The witness explained that this included the salary paid him, his upkeep, and his winnings for each horse he rode. The last item is based on the fact that a jockey gets a premium when his horse wins. The witness afterwards put his estimate of Blanchard's earnings as high as $10,000 per year after the first year of jockeying. It is the height of speculation to testify as to what anyone will win on horse races. While it might properly be proven what a jockey usually receives with reasonable certainty in his business, and that this boy had chosen to be one and apparently had qualities as such, a witness should not be allowed to figure out and to testify what in his opinion the particular boy would likely earn. It is the function of the jury to make such estimates. See United States v. Spaulding, 293 U.S. 498, 499, 55 S.Ct. 273, 79 L. Ed. 617; Hamilton v. United States (C. C.A.) 73 F.(2d) 357; United States v. Provost (C.C.A.) 75 F.(2d) 190.

But I think the court below was right in holding that there was at least a jury issue as to the liability of the Texas Breeders & Racing Association, Inc., for the wounding of Blanchard by Eaves. Charak, an officer of the association, testified that Eaves was its paid employee to keep decorum and protect the property of the association and of the owners of the race horses; that the association employed no jockeys but they were employed by the owners of the horses. "There were a great many boys there, and it was his duty to see that these boys behaved themselves properly and to see that they went to bed at certain times at night. And it was his duty to look after those boys, to keep in contact with them, and see that they behaved themselves, and it was his business to be around and to carry firearms." The boys were the business guests of the association and were to an extent in the guardianship of this watchman. They were entitled to care that the physical premises be safe, and that a proper guardian be in charge of them. This relationship is important, and is not to be overlooked. Eaves on the night in question was on duty wearing his pistol, and in pursuance of his employment was visiting the quarters of the boys shortly before their hour for retirement. The loaded pistol furnished him by his employer was a highly dangerous instrumentality and to be kept with a care proportioned to its danger. Especial-

ly was there a duty neither by act nor by negligence to injure with it one of these boys for whose protection in part he had the weapon. It seems to me that in the special circumstances a willful injury to one of them might have rendered the association liable. Compare Bracken v. Cato (C.C.A.) 54 F.(2d) 457. But there was here no willful act but a negligently dangerous handling of a loaded pistol which Eaves, representing his employer, should have kept safely. He did not intend to fire it. He only intended to "twirl" it with his finger in the trigger guard. The firing was unintentional but it was negligent. He should have put the pistol in the scabbard. As to these boys who were the guests of the association and put under the care of Eaves by it, the association is bound by his want of caution in handling the gun with which it armed him. I see no such distinct turning aside from his employment as watchman and caretaker of persons and property as to relieve his employer of responsibility for his negligence. The jury might properly so find, as they did under proper instructions of the court. The case of Galveston, H. & S. A. Ry. Co. v. Currie, 100 Tex. 136, 96 S. W. 1073, 10 L.R.A.(N.S.) 367, relied on in the majority opinion, recognizes fully the special responsibility of a master for dangerous instrumentalities put into a servant's hands, but holds that the air hose there involved was not such, and moreover that the intentional misuse of it was not negligence in its keeping but was a clear departure from the servant's employment and the commission by him of a willful and violent tort. The last conclusion is supported by Davis, Director General, v. Green, 260 U.S. 349, 43 S.Ct. 123, 67 L. Ed. 299. The case of American Ry. Express Co. v. Tait, 211 Ala. 348, 100 So. 328, resembles this in that it involved the accidental discharge of a pistol by an employee who was required to have one. But the court recognized fully the master's responsibility touching dangerous instrumentalities, and expressly held the pistol to be such, but held also that the responsibility was only for the pistol which the express company had furnished and not for the employee's own pistol which had caused the injury. The injured person was also not in the care of the express messenger. Crawford v. Rice (C.C.A.) 36 F.(2d) 199, involving an elevator, does not seem to resemble this case at all. None of the cases compels the conclusion that an employer who sets a watchman with a pistol to care for boys is not liable if the watchman so recklessly handles the pistol while on duty as to shoot one of the boys he was to care for. If Eaves had thus shot one of the race horses, would not the association have been liable?

I concur in the judgment of reversal, but only for the reason first above stated.