# Hilton *v.* Birmingham Railway, Light & Power Company.

## *Crossing Accident.*

(Decided April 22, 1915. 68 South. 343.)

1. *Appeal and Error; Harmless Error; Pleading.*—No error is committed in overruling demurrer to pleas of contributory negligence to counts charging subsequent negligence by the defendant where there is no evidence to support those counts, or if error, it is harmless.

2. *Street Railroads; Person on Track; Subsequent Negligence.*—Where the plaintiff alleges subsequent negligence resulting in injuries to the driver of a wagon who negligently drove onto a street car track, the burden is on such plaintiff to prove such subsequent negligence.

3. *Same.*—Where the action was for injuries to a wagon driver who negligently drove onto a street car track in front of an approaching

[Hilton v. Birmingham Railway, Light & Power Company.]

car, the evidence examined and held to show that the motorman did all in his power to stop the car after discovery of plaintiff's peril.

4. *Same; Duty of Motorman.*—The fact of the presence of a wagon being driven along beside a street railway track is not an indication that it is apt to turn onto the track in such a sense as to require the motorman to slacken speed in anticipation of such a move.

5. *Same; Complaint; Initial Negligence.*—A count which alleges negligence by a motorman in failing to slacken the speed of the car on approaching a wagon which was being driven along beside the track charges initial negligence to which the driver's contributory negligence in turning on to the track without looking is a defense, and does not charge negligence subsequent to the contributory negligence.

APPEAL from Jefferson Circuit Court.

Heard before Hon. E. C. CROW.

Action by A. W. Hilton against the Birmingham Railway, Light & Power Company, for damages for injury suffered in a collision with a street car. Judgment for defendant and plaintiff appeals. Affirmed.

J. B. AIRD, for appellant.

TILLMAN, BRADLEY & MORROW, and L. C. LEADBEATER, for appellee.

SOMERVILLE, J.—The plaintiff was driving his wagon along a street in Birmingham, and, while crossing the defendant's street car track, was run upon and injured by a passing car. Plaintiff's own testimony—and there is none more favorable to him—shows conclusively that he was guilty of contributory negligence in not stopping and looking or listening just before he turned sharply in upon the track, just a few feet to his left as he was then traveling. Defendant's pleas of contributory negligence being thus established, all minor questions growing out of the issue of initial negligence under counts 1 and 4 may be disregarded.

(1) Counts 3, 5, and 6 are for subsequent negligence, and the trial court very clearly erred in overruling the

demurrers to the several pleas of contributory negli-gence in so far as they were interposed as defenses to these counts. It is necessary, therefore, to consider whether or not there was any evidence before the court which required the submission to the jury of the case made by these subsequent negligence counts. If not, the overruling of the demurrers, as noted, was error with-out injury, and cannot work a reversal of the judgment, and other rulings assigned for error are immaterial.

(2) Under counts 3 and 5 the burden was on plain-tiff to show that his peril was discovered by the car men in time to have stopped the car before it struck him, and that they neglected to use the means at hand to prevent collision. And under count 6 plaintiff was bound to show that the car men saw plaintiff's wagon on or dangerously near the track, and observed that he was ignorant or heedless of the car's approach, and thereafter negligently failed to keep the car under such control and within such a speed as that it could be stopped by ordinary care and diligence in time to avoid the collision.

(3) The undisputed evidence is that the speed of the car was between 10 and 15 miles an hour, and that this was its ordinary speed; that the wagon was moving in the same direction as the car, on its right, and was plainly visible to the car men from Elyton station, about 150 yards away; and that, when the wagon turn-ed in on the track, the car was about 60 feet away. It does not appear that the wagon or its occupants had previously given any indication whatever of a purpose to cross the track. Plaintiff's witness Bean, who was in the wagon with him, said: "Just as we turned to go on the track I looked back, and the car was 20 steps away, which would be about 60 feet."

Plaintiff himself said: "I was driving in a jog trot, but the horse was walking, when I started to pull her across. The horse got a little over midway the track, and when Mr. Bean hallooed, 'Look out,' I jerked her back to the right, and got the fore wheel out of the way, but it struck the hind wheel."

Plaintiff's witness Burns, who was on the car when it collided with the wagon, said: "I saw it hit the wagon. * * * I cannot say how far the car ran after striking the wagon, but something like 20 or 30 feet. I first noticed a slackening in the speed of the car some little distance before it hit the wagon; I do not know just how far, but enough so that I could look out of the car and see it hit it; I felt the slackening some 30 or 40 or 50 or 60 feet before it struck. * * * It was the stopping of the car which caused me to take notice. * * * I never saw a street car going at that speed make a quicker stop than was done on that occasion; * * * that was the quickest stop I ever saw."

Three other eyewitnesses testifying for defendant, agreed in their estimate that the wagon turned in on the track when the car was about 25 feet away; and all said that the car made a very quick stop under the circumtances. The nearness of the car to the wagon is emphasized by plaintiff's statement that as he pulled the horse on the track, Mr. Bean cried, "Look out," and he pulled her, and about that time the car struck the wheel.

The only evidence as to the conduct of the motorman is found in the testimony of defendant's witness Flora, who was standing near by him on the platform of the car when the collision occurred. He said: "They [in the wagon] turned all at once almost square across the track. One of them looked back I think just about the time they got the horse lined up on the track. When

they turned to cross the track, in my judgment, the car was between 20 and 25 feet from the wagon. When they did that the motorman almost reversed, but he had put on his air brake. That is all he did, except to ring his gong just about the time they were reining their horse up on the track; he did not blow the whistle at that time. The motorman's action in applying the air and ringing the gong were very quick when they turned toward the track."

This witness said that when within 50 feet of the wagon the car had slowed down to 6 or 7 miles an hour, and, when it struck it, to 4 or 5 miles an hour.

Though many other statements were made by the several witnesses, the vital facts as above shown were without material contradiction.

It affirmatively appears from the foregoing testimony that the motorman did all in his power to stop the car as soon as plaintiff's peril became apparent, and that it was stopped as quickly as possible; nor was there any evidence tending to show within what distance such a car at such a speed could or should have been stopped. Quite clearly the third and fifth counts were not only without support in the evidence, but they were affirmatively refuted by the evidence.

(4) Nor does the sixth count stand any better, unless it can be affirmed that the mere presence of the wagon driving along by the side of the track placed it in a position of danger which required the motorman to slacken his speed in anticipation of a sudden turn of the wagon on to the track. But this is not the law. "To hold that the cars must check up whenever a vehicle is on the street near the track would be almost to prohibit the cars from running, except at a very low rate of speed, as vehicles are on the street at almost all times. Consequently the motorman has a right to

suppose that the person traveling on the street will remain on that part of the street not occupied by the railway, at least until he shows by his actions that he is going to attempt to cross, and, if the traveler, without looking to see whether the car is approaching, turns into the track so suddenly that it is impossible to check it in time to prevent the accident, the company is not liable for consequences."—*B. R., L. & P. Co. v. Clerk,* 41 South. 829. We do not think that the application of this principle can be affected by the fact that a street branches off from the other side of the traveled street, opposite the point of collision, as seems to have been the case here.

(5) But, if this count is to be interpreted as to its alternative averment ("upon or dangerously near the track") as charging negligence in this respect, such negligence, if so, was obviously initial negligence with respect to plaintiff's failure to stop, look, and listen, before attempting to cross the track, and there could be no recovery. As to its first averment, it does not differ from the third and fifth counts, and fails of support for the same reasons.

The case of *Jordan v. Ala., etc., Ry. Co.,* 179 Ala. 291, 60 South. 309, relied upon by appellant, did not relate to the crossing of a railroad track, nor did it deal with the question of subsequent negligence, and is not here in point.

Since upon the whole case the defendant was entitled to the general affirmative charge, which was requested in writing, the other questions raised by the assignments of error are immaterial, and the judgment must be affirmed.

Affirmed.

ANDERSON, C. J., and MAYFIELD and THOMAS, JJ., concur.