143 So. 897

## BECKNELL v. ALABAMA POWER CO.

### 7 Div. 140.

Supreme Court of Alabama.

Oct. 6, 1932.

Rehearing Denied Nov. 3, 1932.

Further Rehearing Denied Jan. 27, 1933.

Rutherford Lapsley and Young & Longshore, all of Anniston, for appellant.

Knox, Acker, Sterne & Liles, of Anniston, for appellee.

THOMAS, J.

The suit was for wrongful death and the affirmative charge given at the request of the defendant. The verdict was for the defendant. It is necessary, therefore, that the evidence and reasonable tendencies thereof be considered.

This cause was tried upon counts 2 and 3 of the complaint, charging, respectively, wantonness and subsequent negligence. It is alleged that one of defendant's street cars was being operated upon Main street, a public street or highway, in the town of Oxford, going in a southerly direction; that plaintiff's intestate was at such time and place driving an automobile in a northerly direction, approaching said street car upon defendant's street car track. Count 2 alleges that defendant's said street car collided with the automobile of plaintiff's intestate, as a proximate consequence of which he was killed; and that intestate's death was proximately caused by the wanton, willful, or intentional conduct of defendant's servant or agent, etc. Count 3 alleges that intestate was upon defendant's street car track, and defendant's street car was rapidly approaching intestate, and he was then in a place of danger; that the danger of intestate was seen or known at that time to defendant's agent or servant in charge or control of defendant's street car, but, notwithstanding such knowledge on his part, he negligently permitted the street car to run upon or against the automobile in which plaintiff's intestate was driving, thereby killing him, etc.

Plaintiff introduced in evidence interrogatories propounded to defendant by her, under the statute (Code 1923, § 7764), and also the answers thereto sworn to by J. P. Atkinson, who was the motorman operating the street car which was in the collision. From these answers it appears that the collision

occurred about 10 o'clock p. m., June 28, 1930, at a point approximately 200 feet north of the intersection of McKibbon and Main streets, in the town of Oxford; that, when the street car was about 300 feet from the point of collision, it was going approximately 18 or 20 miles an hour; that from that point on it entered a slight rise, and there was a gradual decrease in the speed as the car made the rise; that the car was probably going from 8 to 10 miles an hour when 25 feet from the point of collision; that it slowed up a great deal in the last 25 feet before the accident, and was either at a dead standstill or going not more than a mile or two an hour when the collision occurred. Facts and circumstances leading up to and surrounding the accident are thus detailed in the answers:

"The motorman rang his bell and sounded the gong a great many times before reaching the point of collision. * * * When the automobile driven by Mr. Becknell was some 40 feet away from the street car it suddenly darted out of line from a place where it then was entirely in the clear, darting at great speed towards the street car. Immediately upon this taking place the motorman rang the gong, tapping the bell as fast as he could and as loud as he could, and continuing to do so until the automobile was five or ten feet away from the street car, at which point the motorman jumped back in the car to escape the danger of flying glass resulting from the automobile running into the street car at the high rate of speed the automobile was making.

"This accident occurred at night and it was impossible for the motorman to know when he first saw this particular automobile, as there was a long line of automobiles and about all that was visible was the row of headlights. It is probable that the lights of this particular automobile, together with the lights of other automobiles in front of and behind it, were seen by the motorman for several blocks, but he had no way of identifying any particular set of lights as the lights of the Becknell car until that car came close enough to be identified by its actions. When the Becknell car was 300 feet from the street car, and when it was 200 feet, and when it was 100 feet from the street car, it represented to the motorman simply headlights in a line of headlights, and, therefore, there is no way to answer the question as to the position, etc., of the automobile when these distances from the street car. The question as to the automobile when 50 feet from the street car can be answered in this way: When the Becknell automobile was about 40 feet from the street car it suddenly darted around a car in front of it and came towards the street car at a high rate of speed. Its position just before this was that it was the automobile next behind the auto-

mobile which was the nearest the street car. The (this) automobile and the Becknell automobile were in a line entirely clear of the tracks just before the Becknell automobile swerved out of line, dashed around the first automobile and darted towards the street car, such swerving commencing at a point when the Becknell automobile was about 40 feet from the street car.

"* * * The moment the motorman saw the automobile swerve out and dart towards him in this way he put in operation a full emergency stop. This is accomplished on a car of the type he was running by a complete release of the controller handle. He completely released the controller handle and the effect of such release was to automatically and practically instantaneously cut off the current, sand the track and apply the airbrakes in emergency position. Sand, air and current disconnections were all made use of.

"* * * The emergency stop is not done by the motorman throwing the brake out by his giving a full release to the controller, leaving the foot valve open. The result of this is that by air compression the circuit breaker is automatically knocked open, the brakes applied in the fullest and hardest manner and the track sanded. This is the type of stop which the motorman made. The sanding of the track commences immediately upon his so making the full release of the controller. Such stop as the motorman made was without any reversing of the car as reversing the car has long since been discarded as obsolete and not as quick a stop as the method above' described which was used by the motorman on this occasion.

"* \ * * The street car was probably running two to four miles an hour when the motorman left the place where the motorman stands regularly which is immediately behind the control lever. * * *

"After the impact the street car was standing still on the rails either at the point or a few inches back, as the automobile seems to have knocked the street car back three or four inches. The automobile was on the track with the front of the automobile under the front of the street car. The left front wheel of the automobile struck about the center of the front platform of the street car.

"There was no obstruction to prevent the motorman from seeing the automobile in front of him, including plaintiff's automobile, except such obstructions as might be created by one automobile in front of another. The motorman was looking towards the front at all times from the time he was 300 feet from the point of collision until he jumped to escape injury from glass. During these three hundred feet doubtless the car the plaintiff (plaintiff's intestate) was riding in, together with the other cars in front of and behind it in the line of cars, were within the

motorman's observation, that is to say, the headlights were so in view. As stated above, there was nothing to identify one pair of headlights from another until something unusual was done by one of the cars. The first occurrence of this kind which the motorman can be positive applied to the Becknell car was the time the Becknell car swerved suddenly out of line and into the street car track, this being when the said automobile was some forty feet from the street car. Something like 30 or 35 feet back of this there was an automobile in the line which for a moment deviated from the line perhaps a foot or two but instantly turned back into the line. The motorman is reasonably satisfied that this was the Becknell car but cannot make oath that it was."

These answers to interrogatories, from which we have quoted, constitute the only evidence in the bill of exceptions descriptive of the actual occurrence. And, so far as this record shows, the motorman was the sole eyewitness to the tragedy.

Plaintiff's witness Hollingsworth testified that he was sitting in a parked automobile, facing towards Anniston—north—the direction from which the street car was approaching; that the collision occurred something like 100 feet back of him; that he saw the street car pass, but did not pay it any attention; that he did not hear any bell rung by the street car, but that it might have rung, he having paid no special attention thereto; that, when it passed him, the street car was running about 20 or 25 miles an hour; that witness heard the collision and looked around; that he went to the scene of the accident and lifted Becknell out of his automobile; that the collision occurred when he looked around; and that the street car was standing still when he saw it.

Plaintiff's witness Pope testified that just before the collision he had driven along McKibbon street to its intersection with Main street, and stopped, Main being a boulevard; that just as he stopped two cars passed going north on Main street, one a Chevrolet coupé—the type of car driven by plaintiff's intestate—and a sedan; that the coupé was in the middle of the street, on the street car track, the sedan on the right side of the street; that the coupé was apparently trying to pass the sedan; that there were no other cars between witness and the place of the collision; that witness paid no attention to other cars going north before that time; did not know whether or not other automobiles passed before the crash; that, at the time the coupé and sedan passed witness, they were going about thirty miles an hour, the former in trying to pass the latter perhaps going some faster; that witness paid no further attention to these two automobiles "after they cleared"—meaning, we suppose, after they had crossed the intersection; that the last witness saw of them the coupé was slightly to the rear of the sedan; and that witness did not look again in their direction until he heard the crash.

It is sufficient to state that other testimony tended to show that there was not a long line of automobiles approaching the street car at about the time of the accident. However, the witnesses testifying as to this showed that their observations were limited to the Becknell car and what followed it; none of them, according to their testimony, was in a position to see what cars, if any, preceded it or may have passed the street car at or about the time and place of the accident.

■ The complaint alleges wantonness and subsequent negligence. The burden of proving one or the other of these rested upon the plaintiff. Hilton v. Birmingham Railway, Light & Power Company, 192 Ala. 474, 68 So. 343; Alabama City, Gadsden & A. R. Co. v. Bessiere, 190 Ala. 59, 66 So. 805; Jordan v. Ala. City, G. & A. R. Co., 179 Ala. 291, 60 So. 309; Mobile Light & R. Co. v. Baker, 158 Ala. 491, 48 So. 119; Anniston Electric & Gas Co. v. Rosen, 159 Ala. 195, 48 So. 798, 133 Am. St. Rep. 32.

■ Aside from the answers to interrogatories, plaintiff's evidence simply shows that plaintiff's intestate while riding in his automobile came into collision with a street car. Inferentially, his car was seen traveling in the middle of the street, on the tracks, at a point 200 feet from the point of collision. One witness did not know whether the motorman on the street car sounded his gong or not; was paying no attention to it. Other witnesses did not see other automobiles approaching the street car at the time, but did not know whether there had been other automobiles or not.

Appellant insists that the fact that witness Pope saw intestate's automobile at the intersection of Main and McKibbon streets, traveling in the middle of the street and upon the street car track, furnished a predicate or an inference that the automobile proceeded continuously from that point, in that position, to the point of collision with the street car. It is insisted that this, coupled with the testimony of the motorman that he was keeping the lookout available to him in the night, furnished an evidentiary basis for a finding by the jury that the motorman was sufficiently aware of intestate's peril and negligently acted or omitted to act in such wise, as that such negligence proximately caused the injury. With this we cannot agree. Whether the Becknell car was that seen by Pope at Main and McKibbon streets was a matter of inference. The witness merely said he saw a car of a certain or the same type as that of intestate at said street intersection. If

the car seen by Pope was that in which Becknell was driving, and it was then traveling on the street car track—at a point about 160 or 200 feet north of McKibbon street—the possibility or inference that it continued in the same position for more than 100 feet to the point of collision was an inference that cannot be made the basis of a conflict in the positive testimony of the motorman, which was to the effect that Becknell's car came suddenly out of line onto the track at a distance of 40 feet from the street car. Pope's testimony indicates that the automobile was going around a car in front, which meant that the driver of the coupé was on the track in that passage (around the sedan) and then off the track in order to accomplish and complete the passage of the forward car. The instant situation is like unto that dealt with in Mobile Light & Railroad Co. v. Roberts, 192 Ala. 486, 490, 68 So. 815. Whatever might be said of the position of the Becknell automobile, at a more distant point, the undisputed evidence is that the motorman, upon becoming aware of its presence on the track at a later period and point, brought into the operation of his car all the means at his command, and did all that a reasonably skilled and prudent man similarly situated would have done to avert the injury—such as sounding warning signals and bringing his car to a stop.

We are of opinion the trial court properly gave the affirmative charge at defendant's request in writing.

The remaining assignments of error, challenging the action of the trial court in overruling demurrer to a special plea, need not be considered.

The judgment is affirmed.

Affirmed.

ANDERSON, C. J., and BROWN and KNIGHT, JJ., concur.