# Mooney *v.* Hough.

*Application for Partition of Crops.*

1. *Partition of crops; tenancy in common; lien of co-tenant.*—While a severe or technical construction will not be given to section 3263 *et seq.*

[Mooney v. Hough.]

Code of 1886, for partition of crops in Probate Court, yet the petition must aver the facts out of which the relation springs—the substance of the contract and that the crop was raised and made under it.

2. *Lien of tenant in common for articles advanced for cultivating and gathering crops.*—Section 3075 of Code of 1886 must not be construed narrowly or technically. All agencies, appliances and helps necessarily or customarily employed in producing and utilizing crops come within the scope of the statute. It embraces *field* labor, and indoors labor, with wages, food and raiment. The advances may be made directly or through another, if done on the responsibility of him who claims a lien for repayment.

3. *Advances to make crops.*—It is not incumbent on party making advances, legitimate in kind, to see that they are faithfully applied.

4. *Set-off; advances.*—The defendant may set-off to plaintiff's claim for advances, a debt existing, from party advancing, at the time the contract for advances was made.

5. *Submitting legal question to jury; when not injury.*—Where the court submits a legal question to the jury, which he should have decided in favor of plaintiff, defendant can not complain, since no injury results to him from the finding against him.

6. *Trial; jury; taking papers in jury room.*—Where witnesses in giving testimony use copies of accounts, there is no error in the jury taking such copies in the jury room.

7. *Contents of written instruments; secondary evidence.*—Proof of contents of written orders should not be admitted in evidence without laying the proper predicate for such admission. If paper is presumed to be in possession of party offering the testimony, its destruction or loss or absence must be accounted for before he can prove its contents.


APPEAL from Bullock Probate Court.

Heard before Hon. S. F. FRAZER.

Hough, appellee, filed an application for partition of crops in the Probate Court, alleging the names, ages and residences of parties interested, and location of crops, and that "he and Mooney are joint owners of the following crops, to-wit: the crops of a four-mule farm cultivated and grown during the year 1887, consisting of cotton, corn, cotton seed, . . . and of value the sum of about eighteen hundred dollars; that the said petitioner and the said Mooney have each an half interest in said crops aforesaid; and that the said petitioner and the said Mooney are now both in actual possession of said crops, that is to say, they both live on the same lands upon which said crops were grown, which belong to petitioner. Petitioner further shows unto your Honor, that some of said crops have been gathered, and the remainder is still ungathered; and petitioner further shows unto your Honor, that he has a lien by law or contract on the share of said Mooney in said crops. Wherefore, petitioner prays that said crops of cotton, cotton seed, corn and other produce, be partitioned into two parts or shares, and one of said two shares be allotted to your petitioner and the other share be allotted to said Mooney, according to the statute made and provided."

This petition was sworn to by Peter Hough, who further made affidavit "that he had cause to believe that the crops, or a portion thereof, will be removed, used up, or destroyed . . . before they can be divided," and gave bond under section 3267 of the Code of 1886. Defendant demurred to the petition, and, among other grounds, assigned, "that the said petition does not state any facts which show that the said petitioner has any lien upon the said crops either by law, or contract," and "that the said petition does not state the facts upon which petitioner bases his claim of lien upon the share of said Mooney in said crops." The court overruled the demurrer.

Answering the petition, the defendant admitted "that he and Peter Hough are tenants in common in certain crops, as alleged in the petition, and that they are equally interested in said crops; that the said Hough has a lien by law upon his interests in said crops for certain provisions and supplies furnished respondent as authorized by section 3479 of Code of 1876, and no other lien." In said answer defendant further set up, as set-off against the claim for advances, an indebtedness to him by Hough of $96.25 before the commencement of this suit. On motion of plaintiff, this plea of set-off was stricken from defendant's answer.

Defendant demanded a jury trial. The plaintiff presented his account showing the amount and articles advanced, and to several items defendant objected. One was "cash by T. M. Hough, $7.50," and paid at plaintiff's and defendant's request to a justice of the peace as costs on account of the arrest of a negro man who had been hired by defendant to work, and who did work on said farm during said year, and which defendant had agreed to pay to plaintiff and plaintiff had repaid to T. M. Hough. The plaintiff, under a verbal agreement with defendant that he would pay for one-half thereof, bought seven tons of guano, which was used in fertilizing the farm, and charged defendant one-half the cost thereof. Plaintiff agreed to advance and to furnish money to defendant, and accordingly made arrangements with one Head, and also with Bean & Barnett, for defendant to trade on plaintiff's credit, defendant agreeing to bring plaintiff the bills of goods; defendant brought the bills for a while and then ceased, whereupon plaintiff instructed the parties not to let defendant have anything without his written order, which instructions were followed. The correctness of Head's account against plaintiff for articles sold defendant having

[Mooney v. Hough.]

been proved the original account was introduced in evidence. Certain items of this account embraced coffee, sugar, soda, tobacco, calico, bleaching, hose, needles, thread and matches. Barnett, of the firm of Bean & Barnett, testified his firm had sold goods to defendant at request of plaintiff, whom he held responsible; that a part were sold on written order of plaintiff, and a part were not so sold, and an itemized statement of goods so sold were admitted in evidence against defendant's objection. The witness testified that certain items on said statement, dated and marked "Mdse," and "Mds. order," were sold on separate orders from plaintiff; that each of said orders were in writing and was then at his place of business; that he did not know and could not testify as to the kind of merchandise delivered on these respective orders. Defendant objected that each and all the items herein mentioned as part of plaintiff's account against him for advances, did not constitute a debt against defendant in favor of plaintiff, for which plaintiff had a lien on the share of defendant in the crops raised. On this point the court ruled against defendant, during the introduction of testimony as well as in those charges given the jury at request of plaintiff and those refused to be given when asked by defendant. A charge of the court on another point is sufficiently set out in the opinion. There was also evidence tending to show that defendant's wife did the cooking and washing for the family, and that the daughters of defendant were permitted by plaintiff to clear about ten acres of said farm, and to make a crop thereon; that such land was cleared and cultivated by said daughters with teams furnished by plaintiff to defendant under their contract; defendant plowed said ten acres, and in return said daughters did work in the crops raised by defendant, and many of the items composing the account against defendant for advances were bought of said Head and Bean & Barnett by Mrs. Mooney and by her daughters, and that these items consisted of shoes, calico, thread, bleaching, sheeting, drilling, checks, osnaburgs, needles, &c.

NORMAN & SON for appellant.—The averment that "petitioner had a lien" is the statement of a legal conclusion. Facts should have been set out.—*Frazer v. Thomas*, 6 Ala. 169; 2 Brickell's Dig. 330. Defendant should have been permitted to plead and prove his set-off.—Code of 1876, § 2991. Petitioner had no lien for the item of $7.50 paid

the justice of the peace by T. M. Hough—76 Ala. 550; 65 Ala. 129; 54 Ala. 670; 61 Ala. 417—nor for the guano. Code of 1876, § 3075. The agreement to pay for one-half the guano was not in writing.—Acts of 1884–5, p. 93. The articles furnished by the merchants and objected to by defendant, did not aid in cultivating and gathering the crops, and for them there was no lien.—61 Ala. 417; Code of 1876, § 3075. The orders given Bean & Barnett should have been produced. The articles furnished Mrs. Mooney and her daughters constituted no charge against defendant, for which plaintiff had a lien upon defendant's share of the crops. 76 Ala. 550; 65 Ala. 129; 54 Ala. 670; 61 Ala. 417; Code of 1876, § 3075. The charge of the judge submitted a question of law, as to a lien, to the jury, and is manifestly wrong.

LAW & SMITH, contra. No brief on file.

STONE, C. J.—There are two statutory provisions which shed some light on the present suit. The first is found in section 3064 (3474) of the Code of 1886. That section declares that "the relation of landlord and tenant, with all its incidents, and to all intents and purposes, shall be held to exist between" tenants in common falling within its provisions. Section 3056 (3467) of the same Code gives a lien to the landlord of agricultural lands, not only for rent, but "for advances made in money, or other things of value, either by him ·directly, or by another at his instance and request, or for which he became legally bound or liable at or before the time such advances were made, for the sustenance or well being of the tenant or his family, or for preparing the ground for cultivation, or for cultivating, gathering, saving, handling, or for preparing the crop for market." In considering this statute, we, in *Cockburn v. Watkins*, 76 Ala. 486, said: "These are comprehensive words, and would embrace everything useful for the purposes enumerated, or tending to the substantial comfort or well being of the tenant, his family, or employees about the service." See, also, *Thompson v. Powell*. 77 Ala. 391.

The case of *Marcus v. Robinson*, 76 Ala. 550, and *Hamilton v. Mass*, 77 Ala. 283, and many other similar cases, were controlled by a very different statute.—Code of 1876, §§ 3286 et seq.—not now of force. See, also, *Tyson v. P. S. & C. Asso.*, 57 Ala. 323; *Watson v. Auerbach, Ib.* 353;

[Mooney v. Hough.]

*McLester v. Somerville*, 54 Ala. 670; *Flexner v. Dickerson.* 65 Ala. 129; *Schuessler v. Gaines*, 68 Ala. 556.

The other statutory provision—Code of 1886, §§ 3075 (3479) *et seq.*—embraces all "persons farming on shares, or raising crops by joint contributions, in such manner as to make them tenants in common of such crops." In reference to these the statute declares that each shall have "a lien upon the interest of the other on such crops for any balance due for provisions, supplies, teams, materials, labor, services, and money, or either, furnished to aid in cultivating and gathering such crops, under contract, or, furnished when the interest of such crop requires it in case of a failure of either to contribute the amount and means as agreed upon by the parties." The next section declares that the remedy provided for the enforcement of the landlord's lien shall be applicable to this.

"Provisions," "supplies," "materials," "labor," "services," "money," are very comprehensive words. "Money" is a word of large significance; and "materials," used in the connection in which it is found, is itself very comprehensive. So, the word "supplies," noun of the verb "to supply," has a very large meaning. "To furnish with what is wanted; to afford or furnish a sufficiency for."—Webster's Dic. "To furnish with anything that is wanted; to provide."—Worcester's Dic.

We are not inclined to give to the language employed a narrow or technical meaning; but, treating the words, "cultivating and gathering," as the synonym of *producing and utilizing*, and, at most, expressing an object to be accomplished, we regard the words, "provisions, supplies, teams, material, labor, services and money," as intended to embrace all the agencies, appliances and helps, which are necessarily or customarily employed in the attainment of such object. In these are implied, not only field labor, its wages, food and raiment, but indoors labor, for the preparation of the same. All can not do field labor; and these indoors, auxiliary services and servitors must be provided for, and taken into the account. Taken altogether, we think the statute embraces, and was intended to embrace, the preparation of the land, for that is part of the cultivation. It also embraces the working of the crops, their harvesting, and all else connected with their preservation and utilization. And the advances may be made directly, or through another, if done on the responsibility of him who claims a lien for its repayment.

[Hooney v. Hough.]

We hold that the case we have in hand falls under the influence of the statute last above commented on, and that each of the articles claimed, so far as the record discloses, is within the purview of the statute. All the articles appear to have been furnished at Mooney's instance, and none of them show on their face that they were outside of the purview of the statute, as we have defined it. If some of them were intended for persons or objects not, in fact, of the classes enumerated above, that, in the absence of notice, should not impair the rights of him who furnishes or advances. It was not incumbent on Hough to see to it that advances, legitimate in kind, made by him at Mooney's request, were faithfully applied by the latter. This statutory lien, however, has a limit. Advances having no reference to the production or utilization of the crop, nor to the labor, instrumentalities, or auxiliary influences connected therewith, are not within the statute, and can not be enforced by the remedy here invoked.

The present proceeding was instituted under the statute, Code of 1876, §§ 3521 *et seq.*; Code of 1886, §§ 3203 *et seq.* That statute, while it confers both a right and a remedy for its enforcement, is nevertheless so beneficial in its policy and tendency—so promotive of speedy and inexpensive justice— that we are not inclined to give it a severe, or technical construction. Still, as the statute confers both the right and the remedy—a remedy summary in its nature—the petition must set forth enough to show that the Probate Court has jurisdiction of the suit. It is not every case of tenancy in common of matured crops that the statute is intended, or framed to reach. It must be "corn, cotton, or other produce, *raised* and *made* by persons *in such manner*, as to make them joint owners or tenants in common therein," and it must be matured, and either gathered, or ready for gathering. The statute provides for every case, where the matured crop was *raised* and *made* in such manner, as to make the persons raising it tenants in common, and it reaches no other case. The facts which show this state of case must be set forth in the petition. And if there be a claim for advances, the amount should be stated, with a general description, so as to bring the articles advanced within one or more of the classes enumerated in §§ 3056, 3064 and 3075, Code of 1886. These sections specify the cases of landlord and tenant, and tenants in common, to which the remedy invoked

in this case is adapted, alike for partition and for the recovery of advances.

We would not require much technicality in the frame of the petition. Still, enough must be averred to show that there had been a contract under which the crops were grown, which contract constituted the parties tenants in common; and the facts out of which the relation springs must be briefly averred. This is done by stating the substance of the contract, and that the crop was raised and made under it. It is perhaps to be lamented that in providing this very salutary remedy, a brief form of petition was not furnished, and declared to be sufficient. We feel forced to hold that the demurrer to the petition ought to have been sustained.

In charging the jury, the court should not refer to them the ascertainment of any principle of law; for instance, whether the landlord had a lien for a particular article advanced. The legal feature of the inquiry he should have decided himself, leaving to them only the ascertainment of the facts. But, as the present record fails to show any article advanced, for which the statute does not give the advancing landlord or co-tenant a lien, no error was committed of which appellant can complain. The legal questions involved in the charges the court should have decided in favor of Hough, and hence no injury could have resulted to Mooney from the simple error of submitting them to the jury.—1 Brick. Dig. 337, § 26; *Jones v. Pullen*, 66 Ala. 306.

There was no error in allowing the jury to have with them in their retirement, the copy-accounts, used by witnesses in giving their testimony. *Hirschfield v. Levy*, 69 Ala. 351. The same object could have been accomplished by having the jury make memoranda of the accounts, or of the items composing them, as deposed to by the witnesses. In the absence of one or the other of these methods, it would be very difficult for the jury to reach any thing approximating correct conclusions.

We think defendant's plea of set-off ought to have been allowed, as partial defense to the claim for advances.—Code of 1886, § 2678, and note.

Proof of the contents of written orders should not have been received, without laying the proper predicate for the admission of such testimony. If the paper is presumed to be in the possession of the party offering the testimony, or if it is shown to have been in his possession, then the duty is cast on him of proving its destruction or loss, or other-

wise accounting for its absence, before he will be allowed to prove its contents. If the paper is actually or presumptively in the custody of the adversary, then a notice to produce must be given, to let in 'secondary evidence. If a stranger has the paper and resides in the State, then it is to be brought in by *subpœna duces tecum*, if the trial be in a common law court.

There is nothing in the other assignments of error.

When the case returns to the Probate Court, it will be necessary to amend the petition, unless the parties agree to try on the pleadings as they now appear. It would seem that only the question of set-off need be further litigated, unless new and varying facts are brought out.

Reversed and remanded.