CHARLES E. RUEGAMER,

*Plaintiff and Respondent,*

vs.

ROCKY MOUNTAIN CEMENTERS, INC., a Corporation,

*Defendant and Appellant.*

(No. 2606; November 17th, 1953; 263 Pac. (2d) 146).

For the defendant and appellant the cause was submitted upon the brief and also oral argument of Robert A. Burgess of Casper, Wyoming.

For the plaintiff and respondent the cause was submitted upon the brief and also oral argument of W. J. Wehrli, Casper, Wyoming.

## OPINION

HARNSBERGER, Justice.

This is a direct appeal by the defendant from a judgment of the district court of Natrona County, awarding plaintiff $5,915.06 in an action wherein plaintiff sued to recover $8,060.31.

It appears that in May of 1950, the plaintiff and one Calvin D. Hembree caused the defendant corporation to be formed and that they intended to and did divide the capital stock of the company equally between themselves; that they agreed to each contribute $2,000 in cash to the corporation, and to perform services for the corporation for some seven months without salary—the company however to reimburse them for any expenses incurred in the company's behalf, and that commencing December 1, 1950, they were each to be paid by the company a salary of $1,000 per month. The plaintiff also alleged they were each to furnish the use of an automobile, but the defendant maintains that the automobiles so furnished were to become the property of the defendant corporation.

On December 1, 1950, the plaintiff, Mr. Hembree and one Deal Jones, entered into a contract, providing that the plaintiff and Hembree should each assign 40 shares of their capital stock to Jones, in order that these three men might become equal owners of the company, and that for such transfer of stock, Jones was to pay $7,500 or $3,750 to the plaintiff and $3,750 to Hembree. This contract also provided that this $7,500 should be loaned by the plaintiff and Hembree to the company, and that the defendant would give to each of them its promissory note in the sum of $3,750, bearing interest at the rate of 8 per cent per annum and payable on or before the 1st day of January, 1953. Thereafter and on December 7, 1950, all of the capital stock of the

corporation was issued, the plaintiff receiving 120 shares and Mr. Hembree receiving 120 shares. On February 8, 1951, the plaintiff and Hembree each transferred to Jones 40 shares of their stock, with the result that the plaintiff, Hembree and Jones then owned 80 shares of stock apiece. The money received from Jones was turned over to the company by the plaintiff and Hembree, but the defendant did not deliver its promissory notes to either of these parties as the contract had provided. The defendant denied that this contract had been made with its consent, its knowledge or its approval, and asserted that the money received by the plaintiff and Hembree from Jones was to be applied against their purchase of the stock of the defendant corporation. The defendant also maintained that the plaintiff and Hembree were to receive only one-half of their salary, or $500 a month, in cash, the balance being credited against the amount due for their stock purchase, and that the amounts paid by the plaintiff and Hembree in defraying expenses incurred by them in the company's behalf, were also to be credited against such stock purchase and these items were not to be repaid them in money.

The judgment, while disallowing the expense item for the use in company service of plaintiff's automobile, was silent as to whether the automobiles of the plaintiff and Hembree were to become the property of the company or were only to be furnished for its use, so we must assume that the court found adversely to the defendant on that issue, and it is also evident that the court accepted plaintiff's theory that all amounts due the plaintiff were to be paid in cash rather than credited against his stock purchase, as the court gave the plaintiff judgment for $1,500 for services rendered, $665.06 for expenses paid, and $3,750 for money loaned or a total judgment of $5,915.06.

In substance, the plaintiff testified directly and positively that it was agreed he should receive a salary of $1,000 per month for the period from December 1, 1950 to May 29, 1951; that he had been paid $4,000 on this salary leaving a balance due him of $2,000 which was to be paid him in money rather than credit. The bookkeeper however testified that the plaintiff had been paid $4,500, leaving a balance of $1,500. This constituted substantial evidence to support the judgment of $1,500 for service rendered. The substance of the plaintiff's testimony as to the $3,750 was that he made the loan to defendant; that the note evidencing the loan was never given; that the defendant owed him the $3,750 and that this loan was not to be applied against his stock purchase. The receipt of this amount of plaintiff's money by defendant was also corroborated by other evidence, so that there was sufficient evidence to justify the judgment of $3,750. The plaintiff also testified that he had paid for a large number of individual items representing expenses incurred by him in behalf of the company and had not been reimbursed therefor.

From this brief reference to evidence favorable to the plaintiff and supporting the judgment indicating our understanding of the same, it should be apparent that we feel there is no merit in the charge that the judgment is contrary to and not supported by the evidence, nor has the appellant shown us in what way the judgment is contrary to law.

However, appellant complains that a three page list of expense items referred to in his testimony, was improperly received in evidence over defendant's objection that "it is merely an itemization of what he expended, made after his termination of the company; not the best evidence, for the best evidence would be his original copies, or his original entries that he made

in his own books." In support of his objection to the receipt in evidence of the list, appellant states in its brief—"ordinarily, the only way that an account can be proved is by adducing evidence of the several items contained therein." This last is practically a quote from appellant's cited case of Silva v. Linneman, et al, 167 P. (2d) 794, 797, 73 Cal. App. 2d, 971, which continues—" * * * Oral evidence by individuals possessing personal knowledge of the transactions is the best evidence of the asserted expenditures of an account, * * *".

Disregarding the fact that it later developed that the plaintiff had not kept any books, when the list was offered, the plaintiff had already testified that he had himself prepared the list as the account of expenses paid by him in behalf of the company during the period from May 1950 to and including May 1951; that the items included $1,517.80 for use of plaintiff's personal car in company business charged for at the rate of 5c per mile; that the other items totaling $792.51 were expenditures made for the company's good will in the entertainment of the employees of its patrons, and that all of the items of expense were true and correct. This constituted direct oral testimony of an individual having personal knowledge of the transactions and of the expenditures set forth in the offered account, given in proof of the several items shown. 2 Jones Commentaries on Evidence Second Edition, Sec. 767, p. 1423. By this testimony the list itself became a part of and was incorporated in the plaintiff's testimony. Receiving the list in evidence merely served the court's convenience and it also made available to the defendant an itemized statement for its use in a cross-examination which resulted in the court's disallowing $1,645.25 of the $2,310.31 claimed by the second cause of action.

In Vol. 1, Sixteenth Ed., Greenleaf on Evidence, 545, Sec. 439 (d), it is pointed out that although various

means and instrumentalities may be employed to communicate a witness' knowledge to a tribunal, nevertheless they must all presuppose a qualified witness to give them testimonial support in order that they become acceptable as evidence, and in Sec. 439 (f) the writer notes that thus a writing may form part of a witness' testimony.

In Bradner on Evidence, Second Edition, pp. 469, 470, the author adopts the statement of the court in Howard v. McDonough, 77 N. Y. 592, 594, as follows:

" '* * * a witness may make a list of all the items and their values, and he may aid his memory, while testifying, by such list. He must be able to state that all the articles named in the list were seized and that they were of the values therein stated; and he may use the list to enable him to state the items. *After the witness has testified, the memorandum which he has used may be put in evidence, not as proving anything of itself, but as a detailed statement of the items testified to by the witness.* The manner in which the memorandum, in such a case, may be used is very much in the discretion of the trial judge. He may require the witness to testify to each item separately, and have his evidence recorded in the minutes of the trial, and then the introduction of the memorandum will not be important; or he may allow the witness to testify quite generally to the items and their values, and receive the memorandum as the detailed result of his examination, leaving to the adverse party a more minute cross-examination. * * *' " (emphasis supplied)

This case is also cited in Vol. III, Wigmore on Evidence, Third Edition, Sec. 754 (5), pp. 97, 99, 100, in support of the statement that:

"If by verifying and adopting the record of past recollection the witness makes it usable testimonially, and if by this verification alone can it become so usable, it follows that the record thus adopted becomes to that extent the embodiment of the witness' testimony. Thus (a) *the record, verified and adopted, becomes a present*

*evidentiary statement of the witness; (b) and as such it may be handed or shown to the jury by the party offering it.*" (author's italics)

And the concluding statement of Wigmore on the subject is:

"A few decisions declare that the writing is not 'independent evidence' or 'in itself evidence', but this is to be construed as meaning merely—what no one could deny—that without being verified and adopted it is without standing. A few others expressly refuse to allow it to be 'read in evidence' or 'given in evidence.' But these must be regarded as unsound in principle, and has usually been due to a failure to distinguish the present kind of paper from a paper that merely revives actual recollection."

In State v. Campbell, 116 Utah 74, 208 P. (2d) 530, 533, where a list of articles and their value had been received in evidence over defendant's objection that it was not the best evidence, the court said:

"It is conceded of course, that written instruments prepared merely for trial purposes are usually not admissible. 32 C.J.S. Evidence, § 698, p. 592. If presented in the absence of the witness who prepared them, they are apt to run afoul of the hearsay rule. If that witness is present, their practical value lies merely in the summarizing of voluminous testimony—a matter of convenience. There appears to be no reason for testifying to the values article by article. We find no prejudice to the defense in permitting the testimony of value to be presented by general statements of totaling effect. The cross-examination required the witness to be more specific."

The text of 1 C.J.S., Sec. 16 (b), p. 607, says:

"* * * So where an account includes many items it is sufficient that one witness testifies that each of the items is correctly stated; * * *"

In Ramey v. Baker, 182 Ark. 1043, 34 S.W. (2d) 461, 462, the court said:

"* * * We know of no reason why a party may not make up a statement in writing of debits and credits covering any transaction made the basis of his suit, testify to the correctness of each item, and introduce the statement in evidence. * * *"

In Brown-Rogers-Dixson Co. v. Southern Ry. Co., 79 Ga. App. 449, 53 S.E. (2d) 702, 705, the court admitted a memorandum after positive testimony of the witness, and in Owsley v. Henderson, 228 N. C. 224, 45 S.E. (2d) 263, 265, where a verified statement was admitted, the court says positively:

"The itemized, verified statement attached to the complaint was not admitted in evidence as such. It was admitted only after a witness competent to testify was examined and testified of his own knowledge concerning the matters and things therein contained. Exception thereto cannot be sustained."

In Stone v. Safe Ins. Co., 109 W. Va. 739, 156 S.E. 106, 107, 108, 109, the plaintiff was presented with a paper, prepared under his direction the night before, which purported to show a portion of the goods in the store at the time of the fire, and was asked to state whether or not the goods therein set out were actually in the store and totally lost, and whether the various items and values of the sundry items placed there were correct or whether or not the values were below the true and actual value. To which the witness replied that it was a true statement of the goods and prices, in his judgment and knowledge. Although objection was made, the items were read to the jury and the paper admitted in evidence, but the jury were instructed that they were" * * * to disregard the items in the list as primary evidence of the facts purported to be contained therein, with the additional caution that it was being admitted simply for a matter of convenience in the examination of the witnesses and for the use of counsel." Making further comment con-

cerning the admissibility of the paper, the court also said—" * * * It has been held in a number of cases that an inventory or list made after the fire as a basis of the testimony of witnesses as to the quality and value of the property damaged and destroyed is admissible as a portion of the testimony, although it was made in part from the recollection of the witnesses testifying to its correctness. Case v. Hartford Fire Ins. Co., 13 Ill. 676; Furlong v. North British, etc., Ins. Co., 113 Iowa, 468, 113 N.W. 1084; Cheever v. Scottish Union, etc., Ins. Co., 86 App. Div. 328, 83 N. Y. S. 730." The court then cited Howard v. McDonough, supra, (156 S.E. p. 109) and stated:

"However, in the instant case, in so far as the record discloses, no attempt was made to use the paper for refreshing memory. Its avowed purpose was to expedite getting the amount of loss before the jury. We hardly think it could have been used to refresh memory under the circumstances. * * * And, under the record made, we cannot say as a matter of law that conditions were such that it was impossible for him to have recalled the items set forth in the paper. The admission of the paper was limited, and the evidence introduced thereunder was subject to withdrawal from consideration of the jury should cross-examination reveal circumstances or facts justifying such action. In view of the almost impossibility of giving testimony of such matters in a logical and coherent manner, we think the use of the paper was proper in the present case. * * *"

In Foster v. Smith, 104 Ala. 248, 16 So. 61, 62, the court said:

"* * * The plaintiff Rudder, who had kept the accounts for plaintiffs, when on the stand as a witness, produced a memorandum which he had made out, and which he testified showed correctly every item of debit and credit between the parties. It does not appear that this memorandum was used to refresh his recollection as a witness, or to supply the place of recollection, * * *. But he proposed to introduce the paper in evidence, not as

evidence of the correctness of the account, but to aid the jury in recollecting his testimony as to what the correct items of account were, he having testified, from independent recollection, to the correctness of each item on the memorandum. It has been several times decided by this court that it is not error to allow an account to go to the jury under such circumstances, and for such a purpose. Hirshfelder v. Levy, 69 Ala. 351; Mooney v. Hough, 84 Ala. 80, 4 South. 19; Snodgrass v. Coulson, 90 Ala. 347, 7 South. 736. The question now is whether it is error to refuse so to allow it. The writer is inclined to the opinion that the admission to the jury of such memorandum, under the circumstances of this case, for the purpose mentioned, should be left to the sound discretion of the trial court; but the other members of the court think, and we so hold, that it is a valuable right of the party offering it, the denial of which is a reversible error."

In Pace v. Louisville & Nashville R. Co., 166 Ala. 519, 52 So. 52, 56, the court in commenting upon Foster v. Smith, supra, said:

"* * * The rule there established is a rule of convenience rather than a rule of evidence, and has been applied in cases where, a witness having testified out of his own independent recollection to a considerable number of items, a memorandum of them is permitted to go to the jury lest they forget. * * *"

In Central of Georgia Ry Co. v. Graves, 21 Ala. App. 280, 107 So. 716, the court says flatly:

"* * * The rule is that, if the witness testifies that he knows the contents of the memorandum, made by himself, and knows it to be correct, then both the memorandum and the testimony of the witness is legal evidence. Singleton et al v. Doe, etc., 63 So. 949, 184 Ala. 199; Holland-Blow Stave Co. v. Whitman, 97 So. 52, 210 Ala. 109; Foster v. Smith, 16 So. 61, 104 Ala. 248."

However, in Allison v. Briskey, 36 Ala. 225, 54 So. (2d) 317, the court while approving the holding in Pace v. Louisville & Nashville R. Co., supra, concluded

that in the case before it there was not much detailed testimony as would warrant the admission of the memorandum. Further, the court attempted to reconcile its position with the case of Central of Georgia Ry Co. v. Graves, supra, stating that having examined the original record in that case, it found that there it was admitted the witness proved the separate value of each article as set down and mentioned in the memorandum and, therefore, the Central of Georgia Ry. Co. case was not out of harmony with established doctrines.

We are not impressed with this attempt to harmonize these conflicting holdings of Alabama's Courts of Appeal, and feel that the court in Allison v. Briskey, supra, has confused the reasons making certain memorandum admissible to serve the convenience of the court with those principles which justify the use of memorandum to refresh recollection. As is so clearly pointed out in Acklen's Executor v. Hickman, 63 Ala. 494, 498, the basis for the use of memoranda in aid of the recollection of a witness is:

"* * * First, when after examining a memorandum made by himself, or known and recognized by him as stating the facts truly, his memory is thereby so refreshed that he can testify, as matter of independent recollection, to facts pertinent to the issue. * * * In cases falling within this class, the memorandum is not thereby made evidence in the cause, * * *.

"In the second class are embraced cases in which the witness, after examining the memorandum, can not testify to an existing knowledge of the fact, independent of the memorandum. * * * If the evidence of knowledge proceed no further than this, neither the memorandum, nor the testimony of the witness, can go before the jury. If, however, the witness go further, and testify that, at or about the time the memorandum was made, he knew its contents, and knew them to be true, this legalizes and lets in both the testimony of the witness and the memorandum. The two are the equiva-

lent of a present, positive statement of the witness, affirming the truth of the contents of the memorandum."

The consideration thus given the matter, In re Acklen's Executor v. Hickman, has only to do with the question of whether or not the memorandum may be admitted as substantive evidence. In the first instance, it is pointed out that the memorandum may not be so admitted because there is no necessity for it inasmuch as the available witness after refreshment is enabled to give direct and positive testimony within his present knowledge. In the second instance, the memorandum as well as the testimony is admissible—the testimony to authenticate the memorandum and the memorandum to speak for itself.

But in this case the list was not used as in either of the two instances outlined In re Acklen's Executor v. Hickman. The list was not given the witness to refresh his recollection, but merely to enable him to simplify his testimony as to his present knowledge, viz., that the items of the list were true and correct items of expense incurred by him in the company's behalf. That the court did not see fit to require the witness to repeat over and over again with respect to each item; that on a certain day he had bought a meal, made a telephone call, purchased groceries or driven his car, for the company's benefit, separately stating the cost of each such item, but found it more convenient and expeditious to permit the witness to produce a list—which the witness had prepared for trial—and merely testify that it was a true and correct list of the items he had expended in the company's service, was a matter lying within the court's sound discretion. We will not assume that by admitting the list in evidence, the court accorded to it an evidentiary value which it did not, of course, possess.

Additional complaint is made that the judgment failed to give the defendant any credit for amounts which must be withheld by the corporation by virtue of the provisions of the Federal Revenue Act of 1950, and our attention is invited to Title 26, U.S.C.A., Sections 1400 and 1622. Without attempting to construe in any particular this Federal Law, we do say that we fail to find in the portions cited any requirement for the deduction or the withholding of the taxes therein provided from the wages of the employee except *as and when* the wages are paid. See Title 26, U.S.C.A., Sections 1401 & 1622(a), pp. 61, 152 . In consequence, we consider this point also lacks merit.

In an effort to convince us that the lower court erred in its findings of fact, a considerable part of the appellant's brief is devoted to a discussion of evidence deemed favorable to its theory of the case, but we will not depart from the rule of this court so frequently announced, that in considering such objections we will only examine the evidence most favorable to the successful party, giving to it all reasonable inference necessary to support the judgment.

This leaves for our attention the court's alleged error in overruling the defendant's offer to prove by its bookkeeper that plaintiff agreed to turn in his share of a part of the money received from Jones, on the plaintiff's stock subscription. In conflict with the plaintiff's testimony, the same bookkeeper and Mr. Hembree testified that a portion of plaintiff's agreed salary and all the money spent by the plaintiff for company expenses, was to be credited against plaintiff's stock subscription rather than be paid to plaintiff in money, and the court elected to believe the contrary testimony of the plaintiff. While we consider that the court perhaps erred in refusing to hear this bookkeeper's testimony

to the same effect in support of its theory of the arrangement with respect to the $3,750 loan, under these circumstances it is unlikely that the result would have been any different had the court admitted the testimony, and so we cannot say that the error was prejudicial and hence reversible.

It follows from what has been said that the judgment must be affirmed.

*Affirmed.*

BLUME, C. J. and RINER, J., concur.