NORTHERN GAS COMPANY, A WYOMING CORP-
ORATION,

*Appellant*

(Defendant below)

vs.

EL RANCHO VERDE, INC., A WYOMING CORPO-
RATION,

*Appellee*

(Plaintiff below)

(No. 2835; November 12th, 1958; 332 Pac. (2d) 59)

For the appellant the cause was submitted upon the brief and also oral argument of Harold M. Johnson and Edwin V. Magagna, both of Rock Springs, Wyoming.

For the appellee the cause was submitted upon the brief and also oral argument of Robert A. Burgess of Casper, Wyoming, and C. L. Bates of Rawlins, Wyoming.

## OPINION

Mr. Chief Justice BLUME delivered the opinion of the court.

On March 1, 1956, El Rancho Verde, Inc., hereinafter referred to as plaintiff, filed its amended petition against the Northern Gas Company, hereinafter referred to as the gas company or appellant, for the purpose of recovering the sum of $3,541.57 as money due from the defendant, the gas company, to El Rancho Verde. This amended petition alleged that on or about July 1, 1954, El Rancho Verde and the gas company entered into an agreement to furnish 30 furnaces for houses of El Rancho Verde and install them for the sum of $523.21 each; that later an additional agreement was made for the gas company to furnish El Rancho Verde with furnaces for 19 houses and install them for the sum of $498.21 each; that the gas company entered into a contract with Benny Reese, doing business as Wyoming Sheet Metal, to furnish the necessary labor, sheet metal and equipment to do the installations for the heating units; that this work was subsequently undertaken to be done by Benny Reese; that during August and September 1954 the plaintiff, El Rancho Verde, paid for certain materials and labor for the purpose of the installation of the heating units above mentioned; that on about the 4th of October the plaintiff notified the gas company that Benny Reese did not have sufficient funds with which to buy the materials and pay for the labor in connection with these heating units and notified the gas company's agents that plaintiff had made some payments as above mentioned; that the gas company knew that Benny Reese would be unable to complete the installation work without being advanced funds as the work progressed; that defendant's agent admitted that the sums advanced by the plaintiff should be paid by the gas company; that the gas company did not have a revolving fund or any fund to be used in the payment of labor and materials to be used in the completion of the contract between the plaintiff and

the gas company and requested plaintiff El Rancho Verde to make such payments, and that the amounts advanced by El Rancho Verde should be adjusted later; that thereafter plaintiff El Rancho Verde advanced funds for materials to Benny Reese; that the contract price for all heating units, namely 49, amounted to $25,162.29; that the gas company also furnished plaintiff a special furnace at the cost of $798.09, making a total under said contract and special furnace of the total sum of $25,960.38; that on this contract and special furnace the defendant, the gas company, was paid $15,025; and that the expenses of plaintiff El Rancho Verde in advancing funds for labor, materials, equipment and expenses in completing the work which the defendant had neglected to do was the sum of $14,-476.95, by reason of which the plaintiff El Rancho Verde made an overpayment of $3,541.57 for which the plaintiff asks judgment.

Defendant filed an answer, admitted the contract that was made at the rate of $523.21 and $498.21 above mentioned; that the gas company installed the furnaces as required under the contract; and that it was paid the sum of $15,025 by reason of which there is due to the gas company the sum of $10,137.29 and the sum of $798.09.

The case was tried to the court with a jury and the jury returned a verdict for $3,041.57, being the total amount claimed by the plaintiff except the sum of $500 demanded by the plaintiff for supervision, of which, as the court instructed the jury, there was no evidence. A judgment was entered in accordance with the verdict of the jury, and from that judgment the gas company has appealed to this court.

1. El Rancho Verde claims that it advanced for materials and labor during August and September the

sum of about $2,100, the return of which is asked from the gas company in accordance with an agreement of October 4, 1954. The gas company denied this agreement and further claimed that it is within the Statute of Frauds, providing in § 5-101, W. C. S. 1945, that "Every special promise to answer for the debt, default or miscarriage of another person" must be in writing. We do not think there is any merit in this contention, assuming that the sum was actually expended in fulfillment of the contract. Counsel for the gas company apparently are under the impression that when it let the installation of the work to Benny Reese it was no longer responsible. That of course is not true. It was required to see that the contract was completed according to its terms. Whatever payment for materials and labor was paid by El Rancho Verde on account of this work was for the special benefit not alone of Benny Reese but of the gas company itself. If no recovery were possible the gas company would be unjustly enriched. It was held in the case of Mine & Smelter Supply Co. v. Stockgrowers Bank, 8 Cir., 173 F. 859, 862, 863, 98 C.C.A. 229, as follows:

"Where the promise to pay the debt of another is not the chief purpose of the transaction in which it inheres, and a substantial and valuable consideration therefor inures directly to the benefit of the promisor, * * * the promise does not fall within the statute, and no writing is necessary to support it.* * *"

We think that statement is applicable in the case at bar and the objection above mentioned is overruled.

2. Before proceeding further in examining the correctness of the amounts of money chargeable to the gas company, we should mention the fact that during the time of the installation of the furnaces Benny Reese had two contracts, one for the installation of

the furnaces here in question and, second, an independent contract with the plaintiff El Rancho Verde for the furnishing and installation of gutters, downspouts and some other matters. Furthermore, there is evidence in the record which shows that during this time Benny Reese also installed several furnaces for other parties. According to the testimony of De Georgio, up to about December 1, 1954, Benny Reese would come into the offices of the plaintiff herein saying that there was a certain amount due for labor and materials and plaintiff El Rancho Verde would advance that money. About December 1, 1954, Benny Reese apparently became somewhat incompetent and untrustworthy in looking after his duties by reason of being drunk a good deal of the time, and then from that time on the plaintiff would pay for the labor directly to the parties who performed it, although some money was also still paid to Benny Reese as shown by Exhibit 12.

Henry De Georgio was the bookkeeper and accountant for the plaintiff El Rancho Verde and he was the main witness for the plaintiff in determining as to what amounts were due the plaintiff from the gas company. He testified that he was unable to segregate these various amounts which were thus paid for labor and materials on behalf of Benny Reese. So he took the total which was thus paid and then determined the amount of money that was chargeable directly to the plaintiff and subtracted that from the total, thus arriving at the amount that was due to the plaintiff from the gas company. He submitted a summary of the totals. The total for labor, payrolls and materials amounted to $16,890.23, aside from $1,962.94. He also testified that the total amount that was directly chargeable to the plaintiff El Rancho Verde was the sum of $5,382.20. He submitted the following table:

"Total payments made by El Rancho Verde for Wyoming Sheet Metal [Benny Reese] : Per Attached ------$16,890.23

"Employment Taxes and insurance ------ 505.98

    10% of Payroll ($5,059.87)
    (covers FOAB, FUTA: Unemp. Comp;
    Workmen's Comp and liability insurance)

"Materials transferred from previous project to

    Wyoming Sheet Metal ------ 1,962.94

    Supervision ------ 500.00

Total expended by El Rancho Verde for Wyoming Sheet Metal ------$19,859.15

"Work contracted to Wyoming Sheet Metal, per their statement

| | |
|---|---:|
| "50 - Water Heater ------$ | 375.00 |
| Extra duct work on Groh House ------ | 382.00 |
| 50' - 6" pipe ------ | 18.75 |
| 12 - 6" Ells ------ | 8.20 |
| 1 Access door cover for 1 house ------ | 18.50 |
| 1 Access door cover for Groh House ------ | 24.50 |
| 17 Access Door covers ------ | 270.00 |
| 2240' Drip Cap ------ | 112.00 |
| 1400' Drip Cap ------ | 70.00 |
| 76 Corners ------ | 15.20 |
| 1 Flower box - Groh House.. | 9.50 |
| 22' Seamed Flashing Groh House ------ | 7.40 |
| Vent H. Water Heater Groh House ------ | 32.50 |
| Vent Gas Log Fireplace ------ | 26.75 |
| 112 Corners for siding ------ | 26.60 |
| 4300' Cutter ------ | 1,935.00 |
| Gutter for Mentink ------ | 106.80 |
| Furnace and installation ------ | 438.75 |

| | |
|---|---:|
| Furnace and installation ...... | 518.00 |
| Furnace and installation, Large House ..................... | 986.75 |
| "Total ............................... | 5,382.00 |
| "Excess to be applied to Heating job ......................... | $14,476.95" |

It further appears that the plaintiff paid to the gas company the sum of $15,025 and that the amount due to the gas company for the 49 furnaces and one special furnace was the sum of $25,960.38. He thus arrived at the total amount due as follows:

| | |
|---|---:|
| Amount paid to gas company ........................ | $15,025.00 |
| Excess to be applied to the heating job ......... | 14,476.95 |
| Total ............................................................. | $29,501.95 |
| Subtract the amount under the contract and for the special furnace ..................... | 25,960.38 |
| Balance due the plaintiff from the gas company ............................................................. | $ 3,541.57 |

It may be noted that the jury returned a verdict for this amount less $500 which was charged for supervision but which the court disallowed. This summary above mentioned was introduced in evidence as Exhibit 12.

Defendants objected to the introduction of Exhibit 12 by reason of hearsay, and this objection will be discussed later in the opinion. Meanwhile, it might be of assistance to point out items about which the existing evidence leaves various items doubtful.

a. It may be noticed that there was charged in the summary above mentioned the sum of $1,962.94 for material turned over by the plaintiff to Benny Reese. Among the materials so turned over were one thousand feet of gutter and one thousand feet of downspout valued at $290. We are unable to see why this amount should be chargeable to the gas company herein.

b. On or before December 1, 1954, some of the checks given by the plaintiff to Benny Reese for labor "bounced", that is to say, they were found to be worthless, so the plaintiff El Rancho Verde made these checks good in the sum of $382.63. That amount, of course, was merely a duplication of the labor which was paid and, while that amount is a proper charge against Benny Reese, the plaintiff undertook to pay for the labor and we are unable to see that it should be chargeable to the gas company.

c. The plaintiff paid the sum of $200 for the rental on the shop occupied by Benny Reese. We are unable to see why this amount should be charged to the gas company. The item was paid on April 8, 1955, while according to Mr. De Georgio's testimony Benny Reese left Rawlins in February 1955.

d. The figures of the total amount of money for material and labor advanced to Benny Reese by the plaintiff include $41.45 to the Lincoln Highway Service, $16.76 to the Rawlins Elevator, $29.83 to the Times Stationery, $83.66 to the Mountain States Telephone Company, $108.90 to Leroy's and $36.28 to Carbon County, a total of $316.88. On their face these items were not chargeable to the gas company. There may be explanation for the items, however, in the further retrial in this case. Mr. De Georgio tried to explain

these items by saying that they were advances to Benny Reese but that is no explanation. We might mention the fact in this connection that after December 1st, when the labor employed for the installation of the furnaces was paid directly to the laborers themselves, still the amount paid to or advanced to Benny Reese amounted to about $1,050. There is no explanation in the record why any part of this amount was paid to Benny Reese after the date above mentioned and, if chargeable to the gas company, it should be explained. While properly chargeable to Benny Reese, it does not follow that these items should be charged to the gas company.

e. The material turned over as above mentioned to Benny Reese by the plaintiff valued at $1,962.94 and the material that was bought and paid for by the plaintiff apparently constituted all of the material on hand for the work to be performed on the furnaces and for the plaintiff itself. The evidence shows that no material was left over when the furnaces were finally installed. There is some evidence that Benny Reese installed some furnaces for other parties, so it apparently follows that part of the material heretofore mentioned was used in the installation of the furnaces for these parties. The amount of labor and material expended on these outside contracts would not be chargeable to the gas company and further evidence should elucidate the matter.

f. In the amount mentioned in the summary above set out as chargeable directly to the plaintiff of $5,-382.20, we find no item of labor which was performed in connection with the gutters and downspouts. Mr. De Georgio testified that the furnaces mentioned were outside of the contract involved in this case. If any item of labor for downspouts and gutters was includ-

ed, we have not been able to find how the witness arrived at the amount of labor attributed to plaintiff on account of such downspouts and gutters. We are left absolutely in the dark and the jury evidently could only guess.

g. The evidence of Mr. De Georgio shows that part of the material used by Benny Reese during the fulfillment of the contract here in question and paid for by appellant consisted of equipment. The kind of equipment or the value thereof does not appear in the record, at least it is not clear to us. It would seem that ordinary equipment used by a subcontractor could not be chargeable to the party for the benefit of whom it is used. Take, for instance, work performed for someone by means of a bulldozer. It would hardly be claimed that the cost of such bulldozer should be paid by the party for whom the work is done. The subject is somewhat obscure. It has not been argued by either party and we refrain to express a definite opinion on it. We might mention in that connection that Mr. De Georgio testified that the plaintiff obtained a bill of sale for the equipment and ultimately sold it for $500. He wondered whether or not this amount should have been credited to the appellant.

We now come to one of the main contentions of appellant herein, namely, that Exhibit 12 was inadmissible because it was based on hearsay testimony or largely so. Exhibit 12 is a summary of the various items involved in the case. Mr. De Georgio testified that the summary was true and correct so far as he knew and the items were paid in the regular course of business. The witness issued the various checks paid for labor and material and that far the testimony was primary and based on the witness' own knowledge, though, perhaps, it would have been better if the checks them-

selves had been introduced in evidence. He and Mr. Anderson, president of plaintiff, to some extent attempted verification of the materials bought and of the labor involved. The testimony as to the item of $1,962.94 for material turned over by plaintiff to Benny Reese also seems to be based on the personal knowledge of De Georgio, but the item of $16,890.23 appears to be based largely on hearsay, that is to say, Mr. De Georgio testified that the main information in regard to the items composing that amount was obtained by him from Benny Reese. So far as admitting the summary in evidence — not considering the question of hearsay—no particular objection can be raised in that connection except that the conclusions as to the amount chargeable to appellant and the amount due to plaintiff are conclusions that should have been stricken and left to the jury. In the case of Ramey v. Baker, 182 Ark. 1043, 34 S.W.2d 461, 462, the court stated:

"* * * We know of no reason why a party may not make up a statement in writing of debits and credits covering any transaction made the basis of his suit, testify to the correctness of each item, and introduce the statement in evidence.* * *"

The point was discussed at length and elaborately by Mr. Justice Harnsberger in the case of Ruegamer v. Rocky Mountain Cementers, Inc., 72 Wyo. 258, 263 P.2d 146.

But that does not meet the point involved in this case. Mr. De Georgio was not able to testify to the correctness of the various items involved in the item of $16,890.23 in view of the fact that according to his testimony the main information he received was from Benny Reese. Appellee contends that this was no objection to the admissibility of Exhibit 12 and cites in

the main 5 Wigmore on Evidence, 3d Ed., § 1530, p. 379, reading as follows:

"(4) The conclusion is, then, that where an entry is made by one person in the regular course of business, recording an oral or written report, made to him by other persons in the regular course of business, of a transaction lying in the personal knowledge of the latter persons, there is no objection to receiving that entry under the present Exception, verified by the testimony of the former person only, or of a superior who testifies to the regular course of business, provided the practical inconvenience of producing on the stand the numerous other persons thus concerned would in the particular case outweigh the probable utility of doing so."

This statement of Wigmore's was considered in the case of The Spica, 2 Cir., 289 F. 436, 443, where the court, among other things, stated:

"* * * but we also recognize as an admissible excuse for nonproduction mere inability by reasonable effort to find the man or men who could speak with personal knowledge.* * *

"If, then, an entry be offered which is proved as part of a regular system, which is substantially cotemporaneous (sic), and concerning which no motive for falsification or probability of negligent error is observed, there exists that reasonable guaranty of trustworthiness which is the second ground of admission of regular entries.* * *"

These authorities do not quite meet the situation in this case. Benny Reese was the main witness who could have testified to the correctness of the items involved and he was not produced as a witness. It is true the testimony shows that he left Rawlins in February 1955, but there is no showing that any effort

was made to obtain his testimony. Until at least it has been shown that his testimony cannot be obtained, we need not determine as to whether or not the hearsay testimony involved herein was admissible. Without such showing Exhibit 12 should not have been admitted in evidence insofar as the item of $16,890.23 is concerned, and on account of the error in that connection and the incorrectness of a number of items heretofore set out, the judgment of the trial court is reversed and the case is remanded for a new trial with permission to amend the pleadings. We might mention the fact that the question of hearsay can perhaps be avoided in an action in quantum meruit but there is no pleading in that connection in the case nor sufficient evidence to determine the case on that theory.

Reversed and remanded.