No. 21887.

DEPARTMENT OF HIGHWAYS, STATE OF COLORADO *v.*
INTERMOUNTAIN TERMINAL COMPANY, ET AL.
(435 P.2d 391)

Decided December 18, 1967.    Rehearing denied January 15, 1968.

DUKE W. DUNBAR, Attorney General, JOSEPH M. MONTANO, Assistant, JOHN P. HOLLOWAY, Assistant, Chief Highway Counsel, for plaintiff in error.

JONES, MEIKLEJOHN, KEHL & LYONS, T. PETER CRAVEN, for defendants in error.

*En Banc.*

Opinion by CLIFFORD H. DARROW.*

THE Department of Highways instituted eminent domain proceedings in the trial court in May 1963, to acquire 1.23 acres, known as Parcel No. 86, from a 6.38-acre tract of land as a right-of-way for a portion of Interstate 70 in the City and County of Denver. The owners of the tract were the defendants in error, Intermountain Terminal Company and Pacific Intermountain Express Co., being known collectively as "P.I.E.," and so designated herein. The other defendants in error were named as respondents in the proceedings because of possible or acknowledged lien rights, but they have not appeared here.

Alleging prejudicial error by the trial court, the Department of Highways has presented five points for consideration through writ of error proceedings in this court. They are as follows: (I) Refusal to instruct the commissioners that property of the owners not a part of the 6.38-acre tract must be included in the residue

---

*District judge sitting under assignment of the Chief Justice under provisions of Article VI, Section 5(3) of the constitution of Colorado.

for assessment of damages; (II) insufficiency of the commissioners' report; (III) improper reception of documentary evidence; (IV) rejection of testimony concerning methods of use and operation of similar properties; and (V) permitting consideration of a lease and option as a factor for an appraiser's opinion of market value of the property taken.

We will discuss these points in like order. ·

(I)

P.I.E. is a freight motor carrier engaged in interstate commerce. The terminal facility in controversy consists of a·highly specialized complexus of improvements. The whole tract of land upon which it was situated prior to· the condemnation proceedings is at the northeast corner of the intersection of East 46th Avenue and Steele Street, the west boundary fronting on Steele Street a distance of 386 feet and the south boundary extending 745.19 feet along East 46th Avenue, all enclosed by chain link fencing, with·an entrance gate near the southwest corner and an exit gate at the northwest corner, both on Steele Street. The improvements consist of a modern concrete T-shaped one-story building which houses offices, shops and the frieght dock, with full basement beneath the office and the shop portions of the structure. The dock has 52 vehicle bays. There are also fueling stations and underground tanks besides a truck weighing station. The area is level and paved. The portion taken in condemnation, being 54,288 square feet (or 1.23 acres), was sliced from the south end of the property along East 46th Avenue.

The improvements on the property were located for the most efficient utilization of the entire complex: The total operation was carefully and expertly planned for the requirements of a large freight trucking terminal. It was organized along scientific principles. One principal aspect which was of great advantage was "across the dock" parking for trucks along the south and north fence lines. The layout was productive of the highest

and best use that it could be put in the loading, unloading and sorting of freight and also for transferring of freight from one vehicle to another.

The evidence introduced by P.I.E. at the trial tended to show that the taking of the 1.23. acres of the property left the freight terminal without sufficient on-site parking; that the parking capacity had been reduced by 41 to 64 percent; and that the residue of 5.15 acres was insufficient and useless for truck terminal operations of a major motor carrier.

On July 31, 1964, the commission returned into court its Ascertainment and Assessment in which it fixed the sum of $43,200 for the property taken and $165,300 as damages to residue. The trial court confirmed the award of the commission and entered written "Findings and Judgment."

With the condemnation proceedings being imminent, and the impending uselessness of its freight terminal facility, P.I.E. purchased 4.26 acres of land on which there was an office building, lying east of and adjacent to its tract, subject to an intervening 50-foot wide public easement, for a purchase price of $260,000. This transaction was made in May 1963, being ten days after the petition in condemnation was filed.

P.I.E. proceeded to develop the rear 2.61 acres of this acquisition for use with the residual 5.15 acres of its tract which was partially taken in condemnation. The remainder of the property so purchased, with its improvements, was sold by P.I.E. for $105,000.

The negotiations by the Department of Highways for the 1.23 acre acquirement, as well as the proceedings for its immediate possession, involved P.I.E.'s original layout, not any other property. It was that 6.38-acre tract which had been developed into a freight trucking terminal. The size, location and shape were ruling factors in its selection by P.I.E. There was a special use for the property.

The taking of a portion of that area rendered it un-

usable for its established use. It was upon this premise that the commission was authorized to ascertain the amount of damage to the portion of the 6.38-acre tract not taken and this it did do.

The ipse dixit of the Highway Department is that the other property purchased by P.I.E. should be considered as a part of the tract which was damaged by the condemnation proceedings, to decrease the amount payable by reason of diminution in ·the market value of the residue.

█ P.I.E. was not required by law to expend a large sum of money to avoid the consequences of the predicament in which the Department of Highways placed it through the expropriation proceedings. The business acumen of P.I.E. in the discovery of the opportunity to buy other property and the expenditure by it of $260,000 for acquiring such property with a subsequent sale of a part of it should not inure to the benefit of the Department of Highways. This "other property" was not damaged by the condemnation proceedings and, therefore, was not residual property.

(II)

The trial court delivered the following Instruction No. 14 to the commission:

"You are also instructed that with your Certificate of Ascertainment and Assessment you are to file with the Court your findings and conclusions of fact, based upon all the evidence properly before you, concerning (1) the value of the Respondent's land and improvements actually taken, and (2) the damage, if any, to the residue of the Respondent's property determined as of June 5, 1965."

The commission returned into court only general findings.

C.R.S. 1963, 50-1-18 in effect at the time provided, in pertinent part, as follows:

"CONTENTS OF REPORT OR VERDICT.

360

(1) (a) * * * the report of the commissioners or the verdict of the jury shall state:

(b) An accurate description of the land taken;

(c) The value of the land or property actually taken;

(d) The damages, if any, to the residue of such land or property;

* * *

██ Condemnation proceedings are sui generis and statutory, encircled by the constitution. The report of the commission, based upon the evidence presented, was in compliance with the above statute. The directions of the trial court requiring more, to that extent, were surplusage not affecting the substantial rights of the parties; therefore, not prejudicial.

Counsel for the Department of Highways point out, however, that this statute was amended by the General Assembly in 1966, by providing that "the report of the commissioners * * * may also contain such other findings or answers to interrogatories as the Court in its discretion may require * * *." This amendment of the statute was enacted subsequent to the proceedings under inquiry and could not have been applicable.

(III)

The Department of Highways complains that the commission received in evidence several documents which were prepared by P.I.E.'s expert witnesses. These exhibits were used during their testimony. They dealt with technical matters and contained summaries and tabulations. None of them was used to refresh recollection.

██ The witnesses who testified with reference to these documents prepared them from personal knowledge and the usual objection of hearsay did not exist since those witnesses were under oath and cross-examined. The Department of Highways was made aware of this evidence through discovery procedures and, in fact, had obtained copies of the original appraisal reports from which some of the exhibits had been abstracted.

██ Documents of the kind in question are in aid and a part of the testimony of the expert and as such are also of assistance to the finders of the facts. Colorado favors the admissibility and not the rejection of evidence in civil actions in accordance with the most convenient methods prescribed by statute and the rules of evidence. R.C.P. Colo. 43. The documents were competent and admissible as evidence. *Lembke Plumbing and Heating v. Hayutin,* 148 Colo. 334, 366 P.2d 673; *Ruegamer v. Rocky Mountain Cementers,* 263 P.2d 146 (Wyo.).

## (IV)

██ The next allegation of error is the curtailment by the commission of evidence offered by the Department of Highways to show the physical layout and methods of parking of comparable motor carrier terminals. This testimony was designed to establish that such carriers did not use across the dock parking. Assuming that evidence of that character was relevant and competent, the commission did not err in this respect for the reason that it gave considerable leeway for presentation of such evidence in the ten-day trial. The offer of additional evidence was only cumulative, the value of which would have been small in comparison with the undue lengthening of the trial and delay in disposition of the controversy.

## (V)

Finally, the Department of Highways alleges error by the commission in permitting the witness, Hitchings, called by P.I.E., to consider a lease and option to purchase among many real estate sale and purchase transactions as a basis for his opinion of the market value of P.I.E.'s property.

██ The witness was qualified to testify. His taking into account a single lease and option contract was de minimis. He did not testify concerning the consideration for it. No prejudicial error was committed by the commission on this point. *People v. LaMacchia,* 41 Cal.2d

738, 264 P.2d 15; *City and County of San Francisco v. Tillman Estate Co.,* 205 Cal. 651, 272 P.585.

 P.I.E. has assigned cross-error because of the trial court's refusal to allow it counsel fees in the sum of $26,690 in the condemnation proceedings; it also urges that its counsel fees in this court should be ordered. We have decided on this date in *Leadville Water Company v. Parkville Water District,* 164 Colo. 362, 436 P.2d 659, that attorneys' fees are not included within the meaning of "costs" as applied to Article II, Section 15 of the Colorado Constitution and are not recoverable in eminent domain proceedings.

The judgment is affirmed.

MR. JUSTICE KELLEY not participating.